M'CREA, *appellant*, and PURMORT and others, *respondents*.

In a contract for the purchase and sale of lands, the *statute of frauds* is satisfied if the party to be charged therewith signs the contract; it is not necessary to the validity of the contract that it should be signed by *both* parties.

It is no bar to a *bill in equity*, that the complainant might have sought his remedy by *action at law* for money had and received, in a case where a party received money as the *trustee* of another; in such a case courts of law and equity have *concurrent jurisdiction*.

The *consideration clause* in a deed, that is, the clause acknowledging the receipt of a certain sum of money as the consideration of the conveyance or transfer, is open to explanation by *parol proof*. Thus, where the consideration in a deed conveying lands was expressed to be *money paid*, IT WAS HELD, that parol evidence was admissible to show that the consideration, instead of money, was *iron* of a specified quantity, valued at a stipulated price.

*It seems*, according to the *American cases*, that the only effect of a *consideration clause* in a deed is to *estop* the grantor from alleging that the deed was executed *without consideration;* and that for every other purpose it is open to explanation, and may be varied by *parol proof*.

The *statute of limitations* may be pleaded with the same effect in equity as at law, and receives the same construction in both courts; but the admission of a debt is available to take a case out of the statute.

Fraud or mistake by which a party has been prevented from asserting his claim, is no answer to a plea of the statute of limitations.

As a general rule, *it seems* a bill in equity should combine the qualities of a declaration and replication, by anticipating the defence and charging the matter relied upon in avoidance.

APPEAL from chancery. Previous to the year 1812, John Purmort was in possession of about thirty five acres of land in the county of Essex, under color of title. In 1812

he ascertained that his title was defective, and that the estate was in James M'Crea, with whom he accordingly entered into a contract for the purchase of the property. A written contract was drawn up, bearing date 7th May, 1812, signed and sealed by M'Crea, *but not by Purmort;* whereby it was stated that M'Crea had agreed to *release* to Purmort all his interest in the land for the sum of $2000, to be paid in four equal annual instalments, the last instalment falling due in May, 1816. On the 20th September, 1813, Purmort borrowed of the *State* $1000, and mortgaged the thirty-five acres to secure the re-payment of the same. This mortgage was foreclosed, and on the 22d April, 1818, the premises were sold at public vendue, and bid in by the comptroller of the state *for and in the name of M'Crea,* for the sum of $1148,22; the comptroller making such purchase under the impression that he had been requested by M'Crea to make it, and that in doing so he acted as the agent of M'Crea. On the 16th September, 1819, a new arrangement was made between M'Crea and Purmort, whereby it was agreed that M'Crea should execute a warranty deed of the thirty-five acres to Purmort, and the latter should pay M'Crea $5100 for the land. M'Crea accordingly executed a deed to Purmort, conveying the thirty-five acres; the *consideration* expressed in the deed being $5100, which, it was stated in the deed in the usual form had been paid to M'Crea before the ensealing and delivery thereof, the receipt whereof was acknowledged, and from the payment whereof M'Crea released Purmort. On receiving the deed Purmort executed a bond and mortgage to secure the payment of the $5100 in four equal annual instalments next after the date of the bond and mortgage; the payments to be made in good merchantable *bar iron.* The bond and mortgage thus executed to M'Crea were fully paid and satisfied; the last payment being made in January, 1824. M'Crea having neglected to pay the sum of $1148,22, at which the thirty-five acres were struck off at the sale under the foreclosure by the state of Purmort's mortgage, a suit was commenced by the state against M'Crea, in 1826, for the recovery

of that sum, and in September, 1828, a verdict was ob-
tained against him for the amount of the bid; M'Crea
thereupon made a *motion in arrest of judgment*, and in
July, 1830, the judgment was arrested by the supreme
court.     In December, 1830, the attorney-general of the
state, treating the foreclosure of Purmort's mortgage and
the sale had thereon in April, 1818, as utterly void, and
the state not having obtained satisfaction of the moneys
intended to be secured by the mortgage, commenced pro-
ceedings *de novo* for the foreclosure thereof, by the filing
of a bill in chancery against Purmort and two of his sons
to whom he had conveyed part of the property.     To
this bill the defendants put in an answer, confessing all the
material allegations contained therein, and then, on the 24th
October, 1831, they filed a bill in chancery against M'Crea
and the attorney-general, setting forth substantially the
facts above enumerated, and stating in addition thereto
that the property in question was bidden in by the comp-
troller at the sale in 1818 on the foreclosure of the mort-
gage, *as the agent of M'Crea*, being thereunto duly author-
ized by M'Crea; and that the transaction between Pur-
mort and M'Crea, in September, 1819, when M'Crea exe-
cuted his warranty deed and Purmort gave back his bond
and mortgage for $5100, took place in consequence of the
representation of M'Crea that he *had assumed and provided
for the payment of the money due to the state* upon the mort-
gage executed by Purmort in September, 1813, and that
the $5100 agreed to be paid by Purmort to M'Crea was
composed of the moneys due to M'Crea under the original
contract, entered into in 1812, for the purchase of the thir-
ty-five acres, and the moneys due to the state upon the
mortgage executed in 1813.     The complainants prayed
that the bill in chancery filed against them by the attorney-
general might be stayed until the coming in of the answers
of M'Crea and of the attorney-general, and then the two
causes be brought to a hearing and decision at the same
time, and for general relief.     M'Crea put in an answer de-
nying all equity set up in the bill, and reposing himself up-
on the *statute of frauds* and the *statute of limitations*, in re-

spect to the several matters alleged against him. To this answer there was a replication, and proofs were taken. Previous to the filing of the answer, the defendant had *de-murred* to the bill for want of equity, which demurrer had been overruled by the chancellor. Among the proofs adduced by the complainants were the depositions of two witnesses, who testified to admissions made by M' Crea that the consideration of $5100, paid to him by Purmort *was composed of the items as stated in Purmort's bill.* There was also proof of admissions made by M' Crea *within six years* previous to the filing of the bill, acknowledging the circumstances relied on by the complainants in support of their claim, and recognizing an existing indebtedness in respect ot the moneys due to the state on the mortgage executed by Purmort in 1813.

The two causes having been brought to a hearing, the chancellor, in April, 1836, made a decree in the suit of the state against Purmort, ordering the mortgaged premises to be sold, and the amount due to be paid to the attorney-general; and in the suit of the Purmorts against M'Crea, ordering M'Crea to pay to the attorney-general for the benefit of the Purmorts, the mortgage moneys, *within three months;* until the expiration of which time the chancellor directed the sale in the first suit to be stayed ; and also to pay to the *complainants* and to the *attorney-general* their costs in both suits. See the case more fully stated, and the opinion of the chancellor, 5 Paige, 620, *et. seq.* From the decree thus made M'Crea appealed to this court. The case was argued here by

*L. H. Palmer* and *S. Stevens,* for the complainant ; and by

*L. Hoyt* and *B..F. Butler,* (attorney-general of the United States,) for the respondent.

*Points presented on the part of the appellant :*
I.. The complainant's remedy if they have any is at *law,* and not in *equity ;* and the appellant having demurred to

ALBANY,
Dec. 1836.

M'Crea
v.
Purmort.

ALBANY,
Dec. 1836.

M'Crea
v.
Purmort.

the bill for that cause, is at liberty now to urge the defence arising under the demurrer, 2 Johns. Ch. R. 369 ; 2 Caines' Cas. in Error, 56 ; 3 Brown's Par. Cas. 528 ; 2 Paige, 509 ; 4 Cowen, 727.

II. The contract of September, 1819, whereby Purmort agreed to pay to M'Crea $5100, in consideration whereof M'Crea agreed to convey the thirty-five acres to Purmort, was a confirmation of, and merged all previous negotiations between the parties ; and the *parol evidence* adduced in the case to add to or vary the contract was inadmissible, and ought not to have been received. Brown's Ch. Cas. 92 ; 2 Caines' R. 161 ; 1 Johns. Ch. R. 274, 280, *et seq.*; Bland's Ch. R. 287.

III. Purmort not having complied with the contract of 1812, acquired no title to the land, either legal or equitable ; not having signed the agreement or covenanted to pay the money, he was not bound to fulfil but at his option , and there being no mutuality in the contract, its specific execution could not be enforced in a court of equity. 1 Johns. Ch. R. 52 ; 2 id. 282 ; 2 Vernon, 415 ; Bunb. 111 ; 1 Vesey sen. 86 ; 1 Schoale & Lef. 13.

Several other points were made and urged on the argument of the cause by the counsel for the appellant which are not deemed important to be stated.

*Points presented on the part of the respondents :*

I. The appellant M'Crea, by purchasing the equitable interest of John Purmort at the mortgage sale in 1818, became liable in equity to pay off the mortgage debt due to the people of this state ; and that debt was, therefore, in equity and within the true meaning of the covenants contained in the deed of M'Crea to Purmort, an incumbrance of M'Crea, which he was bound by his deed and under the circumstance of the case to discharge.

II. Independently of the obligation assumed by his purchase at the mortgage sale, the appellant M'Crea, under his original agreement of the 7th of May, 1812, and after the express representations made by him at the time of the settlement and conveyance in 1819, and after inlcuding

the state debt in the condition of John Purmort's bond which has been fully satisfied, is in equity bound to make good those representations, and to pay off the debt to the state.

Upon the *questions of law* raised and discussed by the counsel who argued this case, Mr. *Justice* Cowen delivered the following opinion ; upon the *questions of fact* existing in the case, he fully concurred in the conclusions' arrived at by the chancellor.

ALBANY,
Dec 1836.

M'Crea
v.
Purmort.

Cowen, J.   The objection that the agreement of 1812 is void, as being signed by M'Crea only, thus wanting mutuality, and that it must therefore go for nothing in the case is well answered by the learned vice chancellor of the first circuit, in *Hunter's case*, 1 Edw. Ch. R. 5.   After noticing the objection that the covenant to sell was not mutual, the vendee not being bound to purchase, and that the covenant was " one-sided," he remarks, " The cases of *Parkhurst* v *Van Cortlandt*, 1 Johns. Ch. 282, and *Benedict* v. *Lynch*, ib. 370, have been referred to as establishing this point.   Chancellor Kent there intimated that such was the rule, but in a subsequent case in the court of errors, *Clason* v. *Bailey*, 14 Johns. R. 484, he had occasion to review that opinion, which he found to be erroneous, and admits that the point is too well settled the other way to be questioned."   The case cited by the vice chancellor will be found a most conclusive authority that the party to be charged need alone sign the contract, in order to satisfy the statute of frauds.

It is objected that the complainant had an adequate remedy at law.   I need hardly say, that the argument in that form is far from precluding relief by bill in equity.   If the complainant had a remedy at law by an action for money had and received, which I think he had, yet equity has a clear concurrent jurisdiction.   That is founded on the fact that M'Crea took the money as a trustee.   1 Story's Eq. 444, 5.   Willes, 405.   The action for money had and received is in the nature of a bill in equity.   There are numerous cases wherein courts of equity and law have proceeded upon the same ground, to administer each its own

appropriate form of redress. There cannot be a doubt that this is one of those cases. Buller, J., remarks in *Straton* v. *Rastall*, 1 T. R. 370, in the king's bench, that " of late years this court has very properly extended the action for money had and received. It is founded on principles of justice, and I do not wish to restrain it in any respect. But it must be remembered that it was extended on the principle of its being like a bill in equity ; and therefore, in order to recover money in this form of action, the party must show that he has equity and conscience on his side, and that he could recover it in a court of equity."

It was strenuously insisted on the argument, that to allow an inquiry on evidence *aliunde*, into the real consideration of M'Crea's deed, would be to contradict the clause stating the actual payment of the consideration in money. It was also urged that to raise and enforce an implied obligation against M'Crea, would be to enlarge his deed by parol ; that the deed conveys the land only, and limits itself to certain express and definite covenants, beyond which the grantor cannot be made liable. That the whole of the proofs, therefore, beyond the deed were inadmissible within the rule which forbids the contradicting and explaining of written instruments by oral evidence.

No doubt the indenture should be regarded as equally conclusive upon both parties, though actually signed and sealed by M'Crea only. In legal effect it is the deed of both ; and if M'Crea, the grantor, would be estopped to inquire into the nature of the consideration, Purmort, who has accepted and claims under the deed, ought also to be concluded. The question of construction, started at the bar, would therefore seem fairly to arise ; and indeed I should think the turning question in the cause to be, whether either party may not inquire into the consideration with great freedom. The deed states a consideration of $5100 in hand paid. The chancellor received parol evidence to show that the consideration was not *money* but *iron* of a certain quantity and estimated at a certain value. There is certainly a conflict of authority upon this point, greater than I supposed at the argument ; and I am glad it has been

brought before the court of dernier resort. It is one of extensive business application, and touches the common assurances of the country. A point of greater practical importance could hardly arise, for it is presented every day in the transactions of the community, and respects a species of property more valuable and more highly prized than any other. It has been much litigated, and I was surprised to find it so far open as it appears to be. The English authorities are conflicting. *The King* v. *The Inhabitants of Scammonden*, 3 T. R. 474, decided in 1781, throws the clause completely open. An estate in lands was purchased, and the consideration mentioned in the deeds was £28. The offer was to show that the consideration was in truth £30. This was at first denied, on the distinct ground that parol evidence could not be received to contradict the consideration mentioned in the deeds. On a case made, the king's bench, Lord Kenyon, C. J., and Ashurst, J., being present, held directly the contrary. Lord Kenyon said it was clear that the party might prove other considerations than those expressed in the deed. It is true he mistook the case of *Filmer* v. *Gott*, 7 Bro. P. C. 70, 4 id. 230, Toml. ed. which he relied upon; but which, as appears by Brown's report, was a case of fraud. Yet such a strong expression from Lord Kenyon shows the sense of Westminster Hall as to the effect of this clause at that time. It is certainly impossible to reconcile Lord Kenyon's decision with that of *Rowntree* v. *Jacob*, 1 Taunt. 141, made twenty years afterwards. That was an action by a sailor to recover his prize money of a Jew, to whom he had assigned it, by a deed expressing a full consideration, " so much in hand paid, at or before the ensealing and delivery hereof;" and a receipt was endorsed as in the case decided by Lord Kenyon and Ashurst. On the trial an offer was made to show, that in truth nothing was paid, but that the sailor had given the assignment to the Jew with a power of attorney, intending that the money should be received to the use of the former. Mansfield, C. J., entertained considerable doubt, but a majority of the court held that the consideration clause was an estoppel; consequently the sailor lost his money. The still earlier

cases, *Villers & Beamont*, 5 Dy. 146, *a.*; *Mildmay's case*, 1 Rep. 176; *Vernon's case*, 4 Rep. 3; and *vide Peacock v. Monk*, 1 Ves. sen. 128, and *Craythorne v. Swinburne*, 14 Nes. 170, proceeded upon verbal distinctions, which it cannot be of much use to consider; and several of the later cases are of a similar character. *Lompon v Corke*, 5 Barn. & Ald. 606. *Baker v. Dewey*, 1 Barn. & Cres. 193. The last English case on the point which I have seen is *Baker v. Dewey*, 1 Barn. & Cress. 704, decided in 1823; and that is opposed strongly enough to all explanation.

The conflict is equally striking in our own cases. *Schermerhorn v. Vanderheyden*, 1 Johns. R. 139, and *Maigley v. Hauer*, 7 id. 341, hold that the cause is conclusive, and cannot be contradicted or explained. These cases were greatly shaken, not to say entirely overruled, by *Shephard v. Little*, 14 Johns. R. 210, which is an exact authority for the evidence which was received in the court of chancery between the parties before us. The action was for money had and received. The plaintiff owed one Babcock $180, which the defendant paid; and in order to provide for his reimbursement, the plaintiff deeded his land to the defendant, upon his oral promise to sell the premises, and render the balance over the $180 to the plaintiff. The deed was under seal, was absolute on its face, and expressed the consideration to be *five hundred dollars in hand paid.* The defendant having sold for that sum, refused to pay the plaintiff any thing; and at the trial, set up the consideration clause as an estoppel. The supreme court held that the clause was not conclusive, and might be contradicted by the parol evidence. Mr. Justice Spencer, who delivered the opinion of the court, likened the clause to the date of a deed, or a receipt, either of which may, according to all the cases, be either explained or contradicted by parol. Then came the case of *Bowen v. Bell*, 20 Johns. R. 338, which was assumpsit for land sold and conveyed. The plaintiff had sold his land to the defendant, and by the deed acknowledged the receipt of $1000 as the consideration, in the usual words. Nothing was in truth paid; and he was allowed to prove, by parol, that the defendant had agreed to give $250, none of which

had been paid. Mr. Justice Woodworth delivered the opinion of the court, and remarked among other things, that the defendant's contract to pay was liable to no objection arising from the statute of frauds. It appears to me that these cases, if they are to be followed, surrender this clause to the utmost latitude of inquiry, whenever that shall become material to a personal action between the parties. Such too, I find, is the view which generally prevails. " A man is estopped by his deed," says Parker, C. J. in *Wilkinson* v. *Scott*, 17 Mass. R. 249, " to deny that he granted, or that he had a good title to the estate conveyed; but he is not bound by the consideration expressed, because that is known to be arbitrary, and is frequently different from the real consideration of the bargain." The case in respect to which these remarks were made was one wherein the grantee had omitted, by fraud or mistake, to pay the full consideration, and the action was brought for the balance. See also *Goodwin* v. *Gilbert*, 9 Mass. R. 510, 514 ; *Pomeroy* v. *Winship*, 12 id. 514; *Webb* v. *Peele*, 7 Pick. 247 ; and *Bullard* v. *Briggs*, id. 533. *Morse* v. *Shattuck*, 4 N. Hamp R, 229, was an action on the covenant of seisin. The consideration expressed in the deed was $900. The question on the amount was allowed to go to the jury on parol evidence and they found that the consideration paid was only $100. The recovery upon the covenant was therefore reduced accordingly. That case was decided mainly on the authority of the supreme court of the state of New-York. And see *Scoby* v. *Blanchard*, 3 N. Hamp. R. 170 ; and *Pritchard* v *Brown*, 4 id. 397. A precisely similar question on a like covenant, has recently been decided the same way in the sate of Connecticut. The consideration was there shown to be $2800 instead of $1800, the sum expressed. The point was thoroughly and ably examined, Hosmer, C. J. dissenting. *Belden* v. *Seymour*, 8 Conn. R. 304. The course of decision in the state of Maine has been much like that in New-York Their earlier cases held the clause to be conclusive, *Steele* v. *Adams*, 1 Greenl. 1 ; *Emery* v. *Chase*, 5 id. 232 ; but in May term, 1830, the supreme court yielded to the great force of authority in the neighboring states, and held parol evidence

ALBANY,
Dec. 1836.

M'Crea
v.
Purmort.

receivable, *Schillinger* v. *Mc Cann*, 6 Greenl. 364. The course in Maryland was at first that of England. In May, 17:)6. the general court followed the rule in *Rex* v. *Scammonden*, saying that both the consideration clause and the receipt for the consideration money endorsed on the deed were evidence of the lowest order. It was but the mere formal part of the deed, and it was every day's practice to give such a receipt when not a shilling had been paid. *O' Neale* v. *Lodge*, 3 Har. & M' Hen. 433. In April, 1802, the same court held them to be a complete estoppel. *Dixon* v. *Swiggett*, 1 Har. & Johns. 252. Thus the matter stood till June, 1827, when the question was very fully considered by the court of appeals, on the authority of the New-York and other cases, and the clause was thrown open at least to a qualified extent. *Higdon* v. *Thomas*, 1 Harr. & Gill, 139, 145. At its May term of that year, the court of chancery had done the same thing. *Lingan* v. *Henderson*, 1 Bland's Ch. R. 249. The right to explain or contradict has been uniformly sustained in the state of Pennsylvania. *Jordan* v. *Cooper*, 3 Serg. & Rawle, 564. *Hamilton* v. *M'Guire*, id. 355. *Watson* v. *Blaine*, 12 id. 131, 137, 8 Also in Kentucky. *Hutchinson's adm'r and heirs* v. *Sinclair*, 7 Monroe, 291, 293. *Gully* v. *Grubbs*, 1 J. J. Marsh. 388, 9, 390. So in South Carolina. *Curry* v. *Syles*, 2 Hill, 404· See per Johnson, J. in *Garrett* v. *Stewart*, 1 M'Cord, 514. And in Ohio. *Steele* v. *Worthington*, 2 Ham. 182, 186, 7. *Swisher* v. *Swisher's adm'r*, Wright, 755, 6. So in Virginia. *Harvey* v. *Alexander*, 1 Rand. 219, and the cases there cited. The only state whose courts appear to have maintained a steady course of decision favorable to the conclusive character of the clause, is North Carolina. *Brocket* v. *Fescue*, 1 Ruff. 54 ; 1 Hawks, 64, S. C. *Graves* v. *Carter*, 2 Hawks, 576. *Speir* v. *Clay's adm'rs*, 4 id. 22. I have hastily examined the reports of Mr. Devereux, from 1825 when Mr. Hawks stopped reporting, to 1832, and do not find that the question has been reconsidered.

The only embarrassing distinction which appears to attend the American cases, is that suggested by Mr. Justice

Spencer, in *Shepard* v. *Little.* It is that you cannot show a different consideration from that expressed in the deed, though you may show that it is not paid. In *Bowen* v. *Bell,* it is put that a different species of consideration cannot be proved, and that is followed by Mr Justice Johnson in *Garrett* v. *Stewart,* 1 M'Cord, 514. The instance put by him is, that if the consideration expressed should be a *good* one, as love and affection, you cannot prove a *valuable* one. In several of the other cases which I have cited, the judges recognize a similar distinction; but in one sense or another the cases themselves are a direct departure from it. In the very case of *Shepard* v. *Little,* instead of money actually paid as expressed in the deed, the party was allowed to show a mere oral promise to pay it. And in *Bowen* v. *Bell* the amount was different. Hosmer, C. J., in *Belden* v. *Seymour,* expresses his surprise at the distinction. " A consideration of $2000," said he, " is as essentially different from one of a thousand dollars, as wheat is different from specie; for they are of distinct natures, forms and qualities. The point is intuitively evident." The force of these remarks is the more obvious if we take the analogous case of a receipt, to which the consideration clause was likened in *Shepard* v. *Little.* The payment in the receipt, though expressed to be in money, may be contradicted or explained in any way. You may prove the payment to have been in unavailable securities. *Tobey* v. *Barber,* 5 Johns. R. 68. *Trisler* v. *Williamson,* 4 Har. & M'Hen. 219. *Johnson* v. *Weed,* 9 Johns. R. 310. *Tucker* v. *Maxwell,* 11 Mass. R. 143. The general doctrine as to the entire freedom of explanation and contradiction of receipts was adopted by this court in *Monell* v. *Lawrence,* 12 Johns. R. 521 ; and almost all the American cases have followed *Shepard* v. *Little,* in saying that the consideration clause is equally open. Several of these cases were considered in *Morse* v. *Shattuck,* and Richardson, Ch. J., sums up their doctrine by saying: " It is perfectly well settled that a consideration expressed in a deed cannot be disproved for the purpose of defeating the conveyance, unless it be on the ground of fraud. But for other purposes the acknowledgment of the

receipt of money in a deed may be contradicted." The examination was still more critical and extensive in *Belden v. Seymour*, wherein Mr. Justice Dagget, who delivered the opinion of the court thus concludes ; " The principle is every where undoubted, that such a clause in a deed has the effect to prevent a resulting trust in the grantor. He is forever estopped to deny the deed for the uses and purposes therein mentioned ; and this is its *only operation*. The clause is merely formal or nominal, and not designed to conclusively fix the amount either paid or to be paid. Suppose a deed were expressed to be in consideration of five dollars ; is it to be said that five dollars only was to be paid, and is that sum to be conclusive upon the parties at all events ? They are indeed precluded from denying a consideration, but *no further are they precluded*." A more practical, though we cannot say a more learned view is given by Robertson, C. J. of Kentucky, in *Gully* v. *Grubs*. He remarks : " The authorities on this subject in England, as well as in the states of the union, are various and contradictory. But we believe that the consistent doctrine, and that which accords best with analogy and with the practice and understanding of mankind, is that an acknowledgment in a deed, of the receipt of the consideration, is only *prima facie* evidence of payment. The acknowledgment is inserted, more for the purpose of showing the actual amount of consideration than its payment ; and it is generally inserted in deeds of conveyance, whether the consideration has been paid, or only agreed to be paid. If the consideration has not been paid, such an acknowledgment in a deed would be intended to mean, that the specified amount had been assumed by note or otherwise.

An ordinary receipt is not conclusive evidence of the facts attested by it. A separate receipt for the price of land would, it seems to me, be much stronger evidence that the money had been paid, than the customary acknowledgment in the deed of conveyance. At all events it should be as cogent. But it may be contradicted ; why may not the other ? Attention to the principles on which parol testimony is admissible to explain or avoid the effect, or the

apparent import of a writing, may reconcile many if not all of the authorities which seem to be in conflict. One of these principles is, that, as in certain classes of cases, the statute of frauds and perjuries requires writing to vest rights, it would be subversive of the policy of the statute to allow parol testimony to change the legal import of the written evidence of a right. Therefore, in all such cases, ·no inferior grade of testimony shall be admitted to supply or control the intrinsic meaning of the writing.

Another principle, and one more universal than the former in its application is, that wherever a right is vested or created, or extinguished, by contract or otherwise, and writing is employed for that purpose, parol testimony is inadmissible to alter or contradict the legal and common sense construction of the instrument; but that any writing which, neither by contract, the operation of law nor otherwise, vests or passes or extinguishes any right, but is only used as evidence of a *fact*, and not as evidence of a contract or right, may be susceptible of explanation by extrinsic circumstances or facts. Thus a will, a deed, or a covenant in writing, so far as they transfer or are intended to be the evidences of rights, cannot be contradicted or opposed in their legal construction by facts, *aliunde*. But receipts and other writings which only acknowledge the existence of a simple fact, such as the payment of money for example, may be susceptible of explanation, and liable to contradiction by witnesses.

A party is estopped by his deed. He is not to be permitted to contradict it; so far as the deed is intended to pass a right or to be the exclusive evidence of a contract, it concludes the parties to it. But the principle goes no farther. A deed is not conclusive evidence of every thing which it may contain. For instance, it is not the only evidence of the *date* of its execution, nor is its omission of a *consideration* conclusive evidence that none passed; nor is its acknowledgment of a particular consideration an objection to other proof of other and consistent considerations. And by analogy, the acknowledgment in a deed that the

ALBANY,
Dec. 1836.

M'Crea
v.
Purmort.

consideration had been received, is not conclusive of the fact. *This is but a fact.* And testing it by the reason of the rule which we have laid down, it may be explained or contradicted. It does not *necessarily* and undeniably prove the fact. It creates no right; it extinguishes none. A release cannot be contradicted or explained by parol, because it extinguishes a pre-existing right; but no receipt can have the effect of destroying, *per se*, any subsisting right—it is only *evidence* of a fact. The payment of the money discharges or extinguishes the debt; a receipt for the payment does not pay the debt, it is only evidence that it has been paid. Not so of a written release; it is not only evidence of the extinguishment, but is the extinguisher itself.

The acknowledgment of the payment of the consideration in a deed is a fact not essential to the conveyance. It is immaterial whether the price of the land was paid or not; and the admission of its payment in the deed is generally merely formal. But if it be inserted for the purpose of attesting the fact of payment, (as it seldom if ever is, in this country,) it is not better evidence than a sealed receipt on a separate paper would be; and, as we have already said, it seems to us that it would not be as good, for obvious reasons. The practice of inserting such acknowledgments in deeds is very common, whether the consideration had been paid or not. "For and in consideration of $——, in hand paid," is a common place phrase, which may be found in deeds generally; and it is seldom intended as evidence of payment, or for any other practical purpose except to show the amount of consideration. To establish the conclusiveness of such loose expressions, therefore, might produce extensive injustice. If a note had been given for the consideration, and afterwards without payment, a deed be executed for the land, with the common place phraseology in relation to the price, would this be conclusive evidence that the note had been paid off and discharged? Surely not. *See Caldwell* v. *Harlan*, 3 Monroe, 349, 350, 351.

So much for the line of adjudication. Looking at the strong and overwhelming balance of authority, as collectable from the decisions of the American courts, the clause in question, even as between the immediate parties, comes down to the rank of prima facie evidence, except for the purpose of giving effect to the operative words of the conveyance. To that end and that alone is it conclusive. Such effect I have no doubt has long been ascribed to it by conveyancers and dealers in real estate. It is a construction which violates no rule of law, but harmonizes with well settled principles, and should be steadily maintained and applied whenever the ends of substantial justice may require it. Applying the rule to the case at bar, even M' Crea himself would not be estopped, by his hand and seal signed to this receipt of consideration, in an action of covenant against him upon the deed. It is but a common receipt of so much money in payment. *A fortiori* ought not the other party to the deed to be concluded by his mere acceptance. As to this the deed is not the conclusive measure of liability upon the covenants in the deed. A part of the iron was delivered to M' Crea and received by him as cash, or for the purpose of being changed into cash and paid over to the state. In either view it becomes so much money in his hands in trust for that purpose. A violation of that trust entitles Purmort to his bill in equity, or the more technical remedy of an action for money had and received. *Ainslie* v. *Wilson*, 7 Cowen, 662, 667.

Let us not be told that M'Crea has limited his liability even in form to an action upon the covenants in his deed. I agree with him in the argument put forward by his answer that there is no remedy upon those covenants. Purmort's title is sold out upon an incumbrance created by himself cotemporaneously with the deed, for which his grantor can not be made liable on the common covenants. *Volenti non fit injuria.* Nor if there were a remedy could Purmort go into a court of chancery; his remedy was at law exclusively. But the obligation here is entirely collateral; it springs by operation of law from a set of circumstances, connected to be sure with the deed as one of them,

ALBANY,
Dec 1836.

M'Crea
v.
Purmort.

and the direction given to a part of the money which was said to be inaccessible through the solemn forms in which it had been shrouded. The obligation is now seen to be something over and above the covenants. In one case, recently decided, the parties had entered into sealed covenants which implied a consideration, to stand seised of certain lands holden by them in severalty, as trustees for each other in certain proportions; yet oral evidence was received, as between two of the parties to the deed, showing a simultaneous agreement by the defendant, who was one of them, to pay over as a part of the consideration a sum of money due by the plaintiff to a third person. *Davenport* v. *Mason*, 15 Mass. Rep. 90. Mr. Justice Wilde, in delivering the opinion of the court, admitted the general rule, " that parol evidence is inadmissible to contradict or vary the terms of a deed." But he added, " parol evidence may be admitted to establish an independent fact, or to prove a collateral agreement incidentally connected with the stipulations of a deed or other writen contract."

But it is said that the statute of frauds applies, forbidding parol agreements in respect to lands. The contrary proposition was distinctly held in *Bowen* v. *Bell*, and the same thing is either expressly laid down or essentially involved in all the decisions of a kindred character.

It is also said the *statute of limitations* applies, more than six years having elapsed since M'Crea's liability accrued; nay nearly twice that time before the bill was filed. It is indeed true that Purmot's remedy is barred by the statute, if that has not been waived by M'Crea. A party cannot evade the legal bar to his action for money had and received by changing his forum. The jurisdiction of chancery being concurrent with the courts of law, the statute comes in *proprio vigore*, and must receive the same construction here, and can be answered by no other disabilities than if the remedy had been sought at law. *Roosevelt* v. *Mark*, 6 Johns. Ch. Rep. 266. *Hamilton* v. *Shepperd*, 3 Murph. 118, *Kane* v. *Bloodgood*, 7 Johns. Ch. Rep. 90, 111 to 128. In *Murray* v. *Coster*, 20 Johns. Rep. 576, 585, this court held, according to the language of Spencer, C. J. " that where

there is a concurrent jurisdiction in the courts of law and of equity, the rule must be the same, and the statute of limitations may be pleaded with the same effect in one court as in the other." Within the rule thus laid down, Purmort can derive no benefit from the allegation of fraud or mistake by which he may have been prevented from asserting his claim within the six years. *Troup* v. *Smith*, 20 Johns. Rep. 33. But he seeks to answer M'Crea's plea of the statute by proving that he has confessed his liability within six years. This M'Crea says cannot be done upon the bill filed in the court below. At law it is said that fact must have been replied; and on the theory of chancery pleading, whereby a bill must combine the two characters of both declaration and replication, the defence should have been anticipated, and the matter in avoidance charged. Admitting that to be so, as a general rule, see *Miller's heirs* v. *M'Intyre*, 6 Pet. 61, 64, it has no application to this case. It is perfectly well settled that a special replication is not necessary where the plaintiff proceeds at law. Per Abbott, C. J. in *Murray* v. *The East India Company*, 5 Barn. & Ald. 204, 215, 216. *Soulden* v. *Van Rensselaer*, 9 Wend. 293, 295, 297, 8, and the cases there cited. *Dean* v. *Hewitt*, 5 Wend. 257. *Pinkerton* v. *Bailey*, 8 Wend. 600. The admission of a debt is available to take it out of the statute of limitations, whether that admission be express or tacit; whether made to the party or a stranger: and it may be implied from the conduct of the party. These propositions are all clearly established by the cases, collected in a late English treatise. Wilkinson on Limitations, page 61, ch. 4. But there is no doubt, as contended by the appellant's counsel, that the admission should be without reserve; and before it is allowed, the mind should be clearly satisfied upon the evidence, that such an admission has been made out. Having premised thus much, we come to the inquiry how far the rules by which we are to govern ourselves may be satisfied by the proofs in the cause.

[The judge here again adverted to the proofs in the cause, and after reviewing the testimony came to the conclusion that an admission of the debt within six years of the time of the

ALBANY,
Dec. 1836.

M'Crea
v.
Purmort.

filing of the bill was clearly proved. Upon the whole case, therefore, he was in favor of an affirmance of the decree of the chancellor.]

*Senators* EDWARDS and MAISON also delivered opinions in favor of an affirmance of the decree.

On the question being put, *Shall this decree be reversed?* the members of the court present at the decision *unanimously* voted in the negative.

Whereupon the decree was AFFIRMED.