By the Court, Cowen, J.
The question of variance does not arise on the case, though it was taken at the trial. The counts were general, with a literal copy of the bills subjoined. Though the action be upon the statute of 1832, (Bess. L. of 1832, p. 489,) the copy served makes no part of the declaration. It need not,, therefore, be stated according to its legal effect. An exact copy is clearly enough, for the reason that gives due notice. The defendants are* not misled.
But Henry Norton, it is said, did not appear on the proof to have had any adequate power to- accept. There was, however, at least, evidence of authority sufficient to go to the jury ; and all the judge did, on this point being started, was to refuse a nonsuit. I admit that the powers conferred on him by the defendants’ articles of copartnership did not reach accommodation acceptances; nor did it appear that he had ever made such an acceptance before. But he said he was the general agent of the defendants’ firm, having the sole management of the business ; and had, with the defendants’ knowledge, drawn drafts and made notes and endorsements for them. True, he did not mention the specific act of acceptance; but his general powers in the business, and the usage of putting their names to commercial paper in all other shapes, was the same thing, and calculated to raise an inference in the public mind, that he had such a power as to this. It is not necessary, in order to constitute a general agent, that he should have before done an act the same in specie with that" in question. * If he have usually done things of the same general character and effect with the assent of his principals, that is enough. A. ) olds himself out to the world as B.’s part *505 ner; this authorizes B. to do in the name of both, all things which one partner can do in the name of the firm; and, among others, to draw, accept and endorse bills and notes. This is on the principle that one partner is the general agent of the concern. Any other agent recognized as holding the like power, may do the same thing. The agency of H. Norton extended to the whole business of the defendants. Neither of the latter pretended to interfere. Whatever transaction, therefore, the world might regard as pertaining'to that business, and clearly an acceptance is one, ought to bind the firm. It is like the case stated by Malyne—a Imown servant taking up moneys beyond the seas upon his master’s account,,and drawing a bill upon him. He is liable, though he refuse to accept; because, adds the writer, it is understood that the money is obtained on his credit, unless he have made public declaration denouncing his servant to the brokers of exchanges and otherv/ise. (Mal. Lex. Merc, pi. 3, ch. 5, § 6, p. 264, ed. of 1656.) Chitty says, the authority to draw, endorse or accept, by procuration, need not be special; “ but the law may infer an authority from the general nature of certain acts permitted to be done, and usual employ is evidence of an authority.” (Chit, on Bills, 35, a, Am. ed. of 1839.) These are very nearly the words of Lord Eldon, Ch. in Davison v. Robertson, (3 Dow’s Parl. Rep. 218, 229,) whom Chitty cites. Henry Norton was the factotum of the firm. A more comprehensive general agency can hardly be conceived.
But it is said he could not delegate the power to accept. This is not denied, nor did he do so, The bills came for acceptance; and having as agent made up his mind that they should be accepted, he directed Cochrane, the book keeper, to do the mechanical part—write the acceptance across the bills. He was the mere amanuensis. Had any thing like the trust which is in its nature personal to an agent, a discretion for instance to accept what bills he pleased, been confided to Cochrane, his act would have been void. But to question it here would be to deny that *506 the general agent of a mercantile firm could retain a carpenter to make a box, or a cooper to make a cask. The books go on the question whether the delegation be of a discretion. Such is the very latest case cited by the defendants’ counsel; (Emerson v. The Prov. Hat Manufactur. Co. 12 Mass. Rep. 237, 241, 2;) and the latest book. (2 Kent's Com. 633, 4th ed.) Blore v. Sutton, (3 Meriv. 237,) is among the strictest cases I have seen. There the clerk of the agent put his own initials to the memorandum, by direction of the agent; and held, insufficient. Henderson v. Barnewall, (1 Young & Jerv. 387,) followed it. Both were cases arising under the statute of frauds, which requires that the memorandum should be signed by the principal or his agent; and I admit, it is very difficult to distinguish the manner of the signatures there from that now in question by: Cochrane. Every thing there seems to have been mechanical merely, as here; and there may be some doubt, I should think, whether such cases can be sustained. At any rate, in our attempt to apply them, we are met with a case as widely the other way. (Ex parte Sutton, 2 Cox, 84.) The rule as there laid down is, that “ an authority given to A. to draw bills in the name of B. may be exercised by the clerks of A.” Such is the marginal note, and it is entirely borne out by the case itself. Peter Marshall wrote to Lewis & Potter authorizing them “ to make use of his name by procuration or otherwise to draw bills on G. & J.” The clerk of Lewis & Potter drew the bill, signing thus: “ By procuration of Peter Marshall, Robert Edgecumbe.” The lord chancellor put it on the ground that the signature of the clerk would have bound Lewis & Potter, had he signed their name under the general authority which he had. We thus make very little progress one way or the other on direct English authority. Left to go on the principle of any other English case I have seen, and there are many, all we have to say is, I think, that the agent shall not delegate his discretion; but may at least do any mechanical act by deputy. I. do not know that the language of Lord Elleriborough in Mason v. Joseph, (1 Smith's Rep. 406,) has *507 been any where directly carried into an adjudication. But it sounds so much like all the cases professing to go on principle, that I can scarcely doubt its being law. His lordship said, “ It is true an attorney appointed by deed can not delegate his authority to a third person. He must exercise his own judgment on the principal subject for the purpose of which he is appointed; but as to any mere ministerial act, it is not necessary that he should do it in person, if he direct it to be done or upon a full knowledge of it adopt it. Suppose for instance he had got the gout in his hands, and could not actually sign himself, he might have authorized another to sign for him.”
But the point most confidently pressed against the plaintiffs is, that the drawers having had no funds in the defendants’ hands, the latter are entitled to the same defence as if the drawers themselves were plaintiffs. Put thus broadly, it is admitted to be a point directly against the almost entire current of British authority. (Kerrison v. Cooke, 3 Camp. 362. Raggett v. Axmore, 4 Taunt. 730. Fentum v. Pocock, 5 id. 192. Carstairs v. Rolleston, id. 551. Harrison v. Courtauld, 3 Barn, & Adolph. 36. Nichols v. Norris, id. 41, note.) The cases in 3 Camp. and Taunt, were cited and recognized as sound law in Murray v. Judah, (6 Cowen, 492.) And they all hold that the acceptor of an accommodation bill must, in respect to the holder, be considered as the principal; and some of them say that he cannot divest himself of that character even though the holder took it from the person to whom it was lent, with knowledge that it was accommodation paper. In such case, accordingly, though the holder release, or give time to the drawer or endorser who borrowed the bill, that does not discharge the acceptor.- No doubt, the want of bonafides in the holder will let in a defence that the bill was accepted without consideration. But is there any want of good faith in advancing money and taking a bill from the borrower, with knowledge generally that it was accepted for his accommodation ? There certainly is not, unless it be known that it was made for *508 some purpose different from that for which it is used. (Grant v. Ellicott, 7 Wendell, 227.) But the question does not arise here. In this case, the money was advanced to, and the bills taken from the men to whom they were lent,, without notice that the defendants were destitute of effects belonging to the drawers, much less that they would continue destitute.
The bills, however, were not yet accepted when the plaintiffs took and discounted them. This raises the objection that the latter discounted the bills on the credit of the drawers and endorsers alone, and relieves the defendants to a certain extent from the doctrine of estoppel. They did not induce the plaintiffs to loan money by previously putting their names on the paper; and the question is, whether there be any other principle on which they are liable. I think there clearly is. The acceptance of a bill of exchange to secure the debt of a third person is more than a mere special guaranty. The latter must show a consideration on its face. The acceptance of a bill imports a consideration; and though- there was none in this case, as between the drawers and the defendants, yet it was not enough to stop with showing that. The defendants should, at least, have shown beside, that the bills were suffered to,lie 7 • l\ and to mature before they were presented for acceptance. They wére drawn at sixty days after date and discounted on the day of their date, and, by acceptance presently, a delay to collect of the drawers would necessarily ensue. Till the contrary is shown it must be intended that the acceptance was with a view to such forbearance, and in fact worked that consequence. This leaves the case open to the presumption that the acceptances were in consideration of the forbearance. It is not enough to defeat a note or bill, that it appear on its face to have been made or accepted as security for a precedent debt of a third person. (Popplewell v. Wilson, 1 Str. 264.) _ It will still be intended that something collateral to the debt, and something adequate formed the .consideration; and the maker or acceptor must negative *509 every possible intendment. This was held in Ridout v. Bristow, (1 Tyrw. 84, 1 Crompt. & Jerv. 231, S. C.; stated also in Chit, on Bills, 80, a, Am. ed. of 1839, note (g).) The subject is fully considered there, in the point of view now mentioned. It is not to be disguised, that a naked precedent debt of another is not per se such a consideration as will sustain a promise or acceptance. The books on guaranties all show that it is not, as well as the treatises on promissory notes and bills. Yet, nothing is more common than to rely on the note of A. taken as a security for the debt of B. It is like a special guaranty stating value received, which words, I take it, cannot be contradicted so as to destroy the guaranty. (See McCrea v. Purmort, 16 Wendell, 471, 2.) Accepting a bill or making a note is the same thing in legal effect; and it was held, in the case just cited from the exchequer reports, that the words “value received” could not be met and overcome by parol. (Vid. also Woodbridge v. Spooner, 3 Barn, & Ald. 233. 1 Chit. Rep. 661. S. C.) You can no more ■ contradict the legal effect of the words in a note than its direct expression. (Thompson v. Ketcham, 8 John. 189.) Beside, the case is, I think, open to another intendment. When a man borrows money and draws on his friend, who accepts, it should be intended that the acceptor authorized him originally to borrow on the terms that he would accept, which is equivalent to a request of the loan on the part of the acceptor.
New trial denied.