Walworth, Chancellor.
It appears by the report of this case, (1 Hill's Rep. 147,) that, upon the first trial, the circuit judge admitted all or nearly all the evidence which was objected to and rejected on the last trial j and the plaintiff had a verdict, which was set aside by the supreme court. The decision stated in this bill of exceptions, was therefore made in conformity to the previous opinion of the supreme court. It presents two questions for our consideration : Jvrst, whether the judge was right upon the former, trial in receiving parol evidence to show that, at the time of the sale and conveyance from Amidon to Babcock, there was a verbal agreement, in addition to the written warranty contained in the deed, that Amidon should pay off the mortgage which then belonged to Taylor the assignee ; and secondly, whether if such evidence ought to have been excluded, the other facts proved on the first trial were sufficient to entitle the plaintiff to a verdict upon the common count for money paid to and for the use of the defendant.
Upon the first question I think the learned judge who delivered the opinion of the supreme court was clearly right in supposing that all Verbal contracts, made at or before the sale, must be considered as merged in the written contract—the deed of conveyance and the covenants contained therein for the protection of the title of the grantee. The covenant for quiet enjoyment itself shows that it was the understanding of the parties that Amidon, the grantor, assumed the payment of all liens *347 and incumbrances upon the land, so far as was necessary to protect Babcock, and those who might afterwards become the owners of the premises or any part of them under him, in the quiet enjoyment of the land. But the nature and extent of Amidon’s liability must depend upon the covenants in the deed itself. Those covenants run with the land. They passed to the plaintiff Hunt, by the quit-claim deed to him from Babcock, in October, 1834 ; so as to give the plaintiff the same rights, as against Amidon, that he would have had if the deed from the latter, containing the covenant for quiet enjoyment, had been given directly to Hunt himself. (Middlemore v. Goodale, Cro. Car. 503 ; Campbell v. Lewis, 3 Barn. & Ald, 392 ; Spencer’s case, 5 Coke, 16, Fraser’s ed. note a ; Shep. Touch. 176; Platt on Cov. 523.) The fact that the plaintiff took only a quit-claim deed, left him without any personal claim against his immediate grantor. But his rights as assignee of Babcock, upon the covenants in the deed from Amidon, are the same as they would have been if his deed from Babcock had also contained a similar covenant for quiet enjoyment.
From this view of the case it is perfectly evident that if Hunt, instead of purchasing in the premises himself under the decree of foreclosure, had suffered them to be sold to a third person, and had delivered up the possession to the purchaser as directed by the decree of foreclosure, he could immediately have brought an action at law against Amidon, as assignee of the covenant for quiet enjoyment contained in the deed from Amidon to Babcock ; in which action he would have recovered the whole $1200 mentioned in that deed as the consideration for the premises. The defendant, therefore, has been clearly beneiitted by the plaintiff’s bidding in the premises himself, at the master’s sale, for the $470 which was due upon the decree for the debt and costs on the, mortgage foreclosure. The question then arises, whether, upon equitable principles, the plaintiff was bound to stand aside and suffer his land to be sacrificed to a stranger for this smaller sum, and then to resort *348 io his action at law upon the covenant in the deed to Babcock ; or whether the decree of foreclosure and sale, which undoubtedly contained the usual directions, as provided for in the 135th rule of the court of chancery, that the purchaser should be let into possession upon prodt ction of the master’s deed, and the actual sale under that decree, were not of themselves. equivalent, in equity at least, to an actual eviction of Hunt by an action at law founded upon a title paramount to that which Amidon conveyed to Babcock with warranty.
It is at least doubtful whether an action at law could have been sustained upon this covenant for quiet enjoyment, without showing an actual eviction. And I admit that, under such a covenant, the grantee of the land has no righ to give it up voluntarily to a stranger, who claims by title- paramount, or even to pay off an alleged incumbrance without suit, and then resort to his action upon the covenant in the deed. But it is perfectly clear, in this ease, that the plaintiff stood in the place of a mere surety for the amount due on the mortgage, his land being holden for the amount; and that Amidon, not only by the covenant in his deed, but also by virtue of his previous bond of indemnity to Wheeler, was in fact, the real debtor. For, as between Hunt and Wheeler, Hunt, who had derived title to the land from or through a deed which was subsequent to the bond of indemnity to Wheeler, could not, in equity, have been permitted to take an assignment of the bond and mortgage from Taylor, and proceed to collect the money from Wheeler by a suit on the bond. The value of the mortgaged premises being in equity the primary fund for the payment of the debt at the time of the conveyance from Amidon to Babcock, it was the primary fund for that purpose as between Wheeler and the plaintiff, the owner of the mortgaged premises, at the time the decree of foreclosure was obtained. '
Again, it is an equitable principle of very general application, that where one person is in the situation of a mere surety *349 for another, whether he became so by actual contract or by operation of law, if he is compelled to pay the debt which the other in equity and justice ought to have paid, he is entitled to relief against the other, who was in fact the principal debtor. And when courts of law, a long time since, fell in love with a part of the jurisdiction of the court of chancery, and substituted the equitable remedy of an action of assumpsit upon the common money counts, for the more dilatory and expensive proceeding by a bill in equity in certain cases, they permitted the person thus standing in the situation of surety, who had been compelled to pay money for the principal debtor, to recover it back again from the person who ought to have paid it, in this equitable action of assumpsit as for money paid, laid out and expended for his use and benefit.
The case of Exall v. Partridge and others, (8 T. R. 308,) was a case of this description. There, the carriage of the plaintiff Exall, being left upon leasehold premises, was dis-trained for rent reserved in a lease to the defendants, which rent they had covenanted with the landlord to pay; and the plaintiff had been compelled to pay the rent to prevent his carriage from being sold. In that case, it will be perceived, there was no privity of contract between the plaintiff and the defendants, nor any request that he should pay the rent for them. But by the seizure of his carriage upon the demised premises, he was placed in the situation of a surety for the payment of the rent which they, as the real debtors, were in equity and justice bound to pay; and he was allowed to recover the amount thus paid, in the equitable action of assumpsit for money paid for their use. (See also Taylor v. Zamira, 2 C. Marsh. R. 220 ; and Carter v. Carter, 2 Moore & Payne, 732.) The legislature of this state has adopted the same ■ principle, where one person is compelled to pay taxes to save his land or other property from being lost, which taxes another person ought in justice, and equity to have paid. (1 R. S. 410, § 73 ; Id. 419, § 6.).
Under the peculiar circumstances of this case, and without reference to the supposed parol agreement to pay off the mort *350 gage, I think the decree of foreclosure, and the sale under it, was in equity an eviction ; and that the money paid by the plaintiff, to save his property from being sacrificed, was a payment of money by the coercion of legal process for the use and benefit of the defendant Amidon. The plaintiff should therefore have been allowed to recover it back in this equitable action of assumpsit for money paid and expended for his use.
The case of McCrea v. Purmort, (16 Wend. Rep. 460, 5 Paige’s Rep. 620, S. C.,) shows that, upon a bill filed in the court of chancery to compel the principal debtor to pay off the mortgage, and thus save the property from being sacrificed under a decree of foreclosure, that court may grant the appropriate relief. And if so, I can see no good reason why the plaintiff Hunt should not be permitted to bid in the property himself under the decree of foreclosure, and then recover back the money thus paid in this form of action—the amount being much less than Amidon would have been liable to pay, under his covenant of warranty, if the property had been purchased by a third person.
For these reasons, I shall vote to reverse the judgment of the supreme court.
Root, senator, also delivered a written opinion in favor of reversing the judgment of the supreme court.
All the members of the court, seventeen being present, concurring in this result, the judgment of the supreme court was. unanimously reversed.