Allen
v.
Webster.

ERROR from the Washington common pleas. This was an action of *assumpsit*, on a promissory note given by Allen to Catharine Becker previous to her marriage with James Webster, for $95, with interest, dated 9th September, 1813, payable 5 days after date. The suit was commenced in the Washington common pleas in March, 1830, and the defendant pleaded the *statute of limitations*. The cause was heard before referees. To avoid the effect of the plea of the statute of limitations, a witness for the plaintiffs testified that he, as the agent of the plaintiffs, called upon the defendant in March, 1829, and presented the note in question for payment. The defendant at first said there was a mistake in the settlement at the time the note was given, that it was given for too much, it should not have been for more than $50. The defendant looked over his books of accounts and receipts, but could not find any thing to support his allegations; and then on being asked, said that on a fair settlement he would pay what was due on the note, and would not take advantage of the statute of limitations. A few days after this interview, the witness called again on the defendant, when he told the witness that he did not owe Mrs. Becker (meaning Mrs. Webster) any thing. The witness then proposed to submit the matter to arbitration. The defendant said he would do so if the plaintiffs would give security for costs. Witness again asked the defendant if, on a fair settlement, he would pay what should be found to be due; to which he answered he would, if any thing was due: but nothing was due, he did not owe Mrs. Becker any thing, he had more than paid her, and she owed him. He however again promised that he would not plead the statute of limitations. At the second interview, the defendant again examined his books to

see whether he could discover any mistake, but did not. The <span>NEW-YORK,</span> witness, on his cross-examination, stated that in the conversations he had with the defendant, the *defendant invariably insisted that he did not owe Mrs. Becker any thing, but that she owed him.* To show that there could have been no *mistake* as to the amount of the note, the plaintiffs produced a *receipt in full,* of the same date with the note, given by the defendant to Catharine Becker, and called the attention of the referees to an *endorsement* on the back of the note, acknowledging the receipt of twenty dollars, under date of 24th April, 1815, in the *hand writing of the defendant.* Another *witness* present at the second interview corroborated the testimony of the first witness, except that he did not recollect that any thing was said about the statute of limitations. When the plaintiffs rested, the defendant's counsel moved for a *nonsuit,* on the ground that the evidence was insufficient to take the case out of the operation of the statute of limitations. The referees decided that the evidence *was sufficient* to take the case out of the operation of the statute, and made a *report* in favor of the plantiffs for the amount of the note and interest, deducting the payment. The referees made a *special report,* detailing the evidence and their decision thereon; and the common pleas, on a motion to set aside the report, refused to do so, holding that the evidence was sufficient to take the case out of the operation of the statute of limitations, and thereupon confirmed the report and rendered judgment for the plaintiffs. The defendant sued out a writ of error.

May, 1836.<br>Allen<br>v.<br>Webster.

*C. L. Allen,* for the plaintiff in error, insisted that the evidence was not sufficient to take the case out of the statute, and that therefore the common pleas ought to have set aside the report of the referees. The promise, testified to by the witness, if any was proved, was *conditional* that the defendant would pay whatever should be found due on a fair settlement. No such settlement, or attempt to settle, was shown.

*J. Crary,* for the defendants in error, insisted that the report was fully justified by the evidence, and that the common

pleas did right to confirm it.   He relied much on the promise
of the defendant not to plead the statute in bar, and insisted
that he should be held estopped by it from setting up the
statute in bar of a recovery, and in support of this position
cited *The Utica Insurance Co.* v. *Bloodgood,* 4 *Wendell,* 652.

*S. Stevens,* in reply.   In the case of *The Utica Ins. Co.* v.
*Bloodgood,* the agreement not to plead the statute was made
*before* the statute bar had accrued.   There was a considera-
tion for the agreement in that case ; here there is none.   Be-
sides, if this promise is to operate as an *estoppel,* how is it to
be enforced ?   It cannot be by merely proving it, when made
after the statute bar has become perfect.   If available at all,
it must be by motion to strike out the plea of the statute as
put in, in bad faith.

*By the Court,* SAVAGE, C. J.   The only point excepted to
before the referees, was their decision that the evidence was
sufficient to take the case out of the statute of limitations ; and
this was the only point decided by the court of common pleas,
as appears by the record, and also by the written opinion of
the first judge of that court.   Of course no question of evi-
dence can be raised here which was not raised and decided
in the court below.

It has often been remarked that the decisions of courts up-
on the kind of promise necessary to revive a debt barred by
the statute of limitations have been contradictory.   I think it
will be found, however, that among the numerous decisions
of this court, there is none which sustains the decision made
in the court below.

The statute which declares that all actions upon contract
without specialty, &c. shall be commenced and sued *within six
years* next after the cause of action accrued and not after, has
sometimes been considered as affecting the cause of action,
and sometimes as affecting the remedy only ; and hence it
has been argued that if the debt itself is barred and destroyed,
the moral obligation remaining to pay it, is merely the consid-
eration for a new promise ; that the new promise is the cause
of action, and not the old debt ; and that therefore the *new*

NEW-YORK,
May, 1836.

Allen
v.
Webster.

*promise must be express ;* a bare admission that the debt was unpaid, not being a ground to raise an implied promise. On the other hand, it is said that the statute does not destroy the debt itself, but prevents the remedy upon it, upon the presumption that the debt has been paid. An admission, therefore, that the debt is due and unpaid, it is said, raises an *implied promise* to pay it. It is not my intention to enter into any speculation upon this point, but simply to examine some of the cases decided in this court upon the statute, and to ascertain what is the rule in such cases.

The earliest case which it is necessary to advert to is *Sluby* v. *Champlin,* 4 *Johns. R.* 461. The defendant in that case, when arrested, expressed his surprise that the debt had not been paid by his partner, and promised to meet the plaintiff for the purpose of settling the accounts, if the plaintiff would give time for the payment. *Yates,* justice, says, if a party acknowledges a debt to be unpaid, it is such a waiver of the protection of the statute as to repel the presumption of payment, being a recognition of the former liability. The judge, however, subsequently remarks, that the defendant had said that the debt ought to be paid, and mentioned 18 months as the time he wanted for payment. " This," he added, " is a promise sufficient to make him liable." In *Bush* v. *Barnard,* 8 *Johns. R.* 408, the defendant offered to pay in specific articles. The court said the promise was conditional, and the plaintiff was bound to show that he was ready and had offered to accept the specific articles. In *Dean* v. *Pitts,* 10 *Johns. R.* 35, the defendant admitted the notes upon which the suit was brought, but said they had been paid ; that he had sent the money to R. and he supposed R. had paid the plaintiff ; that if R. had not paid the notes, he, the defendant, would, and that he would not plead the statute. The court said that the defendant admitted the debt, and did not pretend that he had paid it, but supposed his partner had, and assumed the burden of proving such payment. This case comes the nearest to the case now before us of any in our reports, and it will be seen that there is a material difference. In the present case the defendant said the note was overpaid ; he agreed to submit it to men if the plaintiff would give security for the costs. It does

not appear that the plaintiffs offered to give such security and claimed the fulfilment of the promise to submit. *Danforth* v. *Culver*, 11 *Johns. R.* 146, was upon two notes due more than six years before the commencement of the suit. On presenting the notes to the defendant, he observed they were outlawed, and that he meant to avail himself of the statute of limitations. It was held that this did not authorize the jury to presume a new promise. In subsequent cases the court recognize the doctrine, that the admission of the debt, unaccompanied with a protestation against paying it, is sufficient to imply a promise to pay it. 15 *Johns. R.* 4. 17 *id,* 330. The case of *Sands* v. *Gelston*, 15 *id.*511, is justly considered a leading case in this court. The subject was fully discussed, and the decision of the court is clear and conclusive. The defendant succeeded the plaintiff as collector of the customs, and received commissions on bonds taken by the plaintiff while in office, more than six years before the commencement of the suit. Within six years he admitted the receipt of the money, and that it had not been paid over to the plaintiff. He frequently said that if the plaintiff had a claim in law or equity, he would submit it to reference; or compromise the business, but that in his opinion the plaintiff had no claim. Mr. Justice Spencer gave the opinion of the court, and held himself bound by authority to consider the acknowledgment of the existence of a debt within six years as evidence of a promise to pay the debt; but insisted that if such acknowledgment was qualified at the time in a way to repel the presumption of a promise, then it will not be sufficient to take it out of the statute. I am not aware that this doctrine has been departed from subsequently—most certainly it has not intentionally. In *Purdy* v. *Austin*, 3 *Wendell*, 189, the case of *Sands* v. *Gelston* is expressly relied on, and Mr. Justice Marcy uses this strong language : " The unqualified and unconditional acknowledgment of a debt, made by a party within six years before suit brought, is adjudged in law to imply a promise to pay; but an acknowledgment of its original justice, without recognizing its present existence, is not sufficient." This is precisely the doctrine of *Sands* v. *Gelston*. The case of *Field* v. *Bradley*, 3 *Wendell,* 272, was decided at the same time with *Purdy* v.

*Austin.* The same case of *Sands* v. *Gelston* was quoted and adopted, and the rule said to be, that a subsisting indebtedness must be admitted in order to imply a promise. So also Mr. Justice Sutherland, in *Stafford* v. *Bryan, 3 Wendell,* 535, in the court for the correction of errors, quotes the same doctrine from the case of *Bell* v. *Morrison,* 1 *Peters,* 351; there must be a present subsisting debt, which the party is willing to pay. In *Dean* v. *Hewitt,* 5 *Wendell,* 257, the defendant said the debt was an honest one and he would pay it when he became able; and his ability was proved. The case of *Hancock* v. *Bliss,* 7 *id.* 268, and *Patterson* v. *Choate, Idem,* 445, recognize the rule in *Sands* v. *Gelston* and *Bell* v. *Morrison,* that there must be a subsisting indebtedness which the party is liable and willing to pay. See also *Soulden* v. *Van Rensselear,* 9 *Wendell,* 293.

Whatever therefore may be the true philosophy of the rule, and learned judges have differed on that subject, yet since the case of *Sands v. Gelston* there has been no dispute as to what the rule in fact is, to wit: that to revive a debt barred by the statute of limitations, whether the statute theoretically operates upon the debt itself or upon the remedy only, there must be an express promise, or an acknowledgment of a present indebtedness; a subsisting liability and a willingness to pay it. If the defendant denies its justice, or claims the protection of the statute, no action lies. If we test the testimony in this case by the above rule, it will be found that the action was not sustained. The principal witness concludes his testimony by saying that in all the conversations which he ever had with the defendant, he invariably insisted that he did not owe the plaintiff, but she owed him. This is very far from admitting an existing demand against him which he is willing to pay.

The counsel for the defendants in error insists that the plaintiff in error is estopped by his stipulation from availing himself of the statute of limitations. That point cannot now arise. The plaintiffs did not raise any question on that subject in the court below; it is therefore not now before us upon this writ of error. In the case of *The Utica Insurance Co.* v.

*Bloodgood,* 4 *Wendell,* 655, it was held that the defendant was estopped by his stipulation from availing himself of the statute of limitations.    He had signed a written stipulation, by which he agreed not to plead the statute of limitations in a prosecution on his note.   The stipulation was given before the statute had attached.    What the pleadings were in that case does not appear from the report, except that the declaration was on a promissory note, and also on the money counts.    Probably the defendant pleaded the statute to the money counts, as upon the trial it was interposed only to such counts.    It was held in that case, that though the plaintiffs could not recover upon the note, yet they might recover for money lent, the security being void, but not the contract of lending.    It was further said, that the stipulation not to plead the statute was not confined, in its true construction, to the note, but to the debt or loan of which the note was evidence.    In that case the question was raised before the referees, and therefore came fairly before the court on a motion to set aside their report. This court did undoubtedly in effect declare, that such a stipulation might be enforced, but in the case now before us it does not come up in a tangible shape.

Judgment reversed.