Philips *v.* Peters.

[AT CHAMBERS, March 22, 1856.  *Balcom,* Justice.]

────  ♦  ────

## PHILIPS *vs.* PETERS.

The statute of limitations only affects the remedy—raising a presumption of payment from the lapse of time; which presumption may be repelled, the remedy restored, and the bar removed, by a new promise or acknowledgment.

The remedy is continued or revived by the new promise, which rebuts the presumption of payment raised by the statute; and the *old demand,* and not the *new promise,* must be the foundation of the action.   Hence it is immaterial whether the new promise or acknowledgment be made to the creditor, or to a third person.

Thus, where, in 1845, (some two and a half years after a right of action accrued upon a promissory note) and whilst the note was the property of A., the de-

Philips *v.* Peters.

fendant (the indorser) acknowledged his indebtedness, and promised to pay the note to A., but this acknowledgment or promise was not made to A. or his agent, or to any person authorized to act for him, but to a third person having no authority to demand or receive payment; *held* that this acknowledgment, being made within six years prior to the commencement of the action, was sufficient to prevent the debt from being barred, or the statute from attaching.

APPEAL from a judgment entered on the report of a referee. In March, 1821, Philips, as the owner of a promissory note, of which one McLean was the maker, and the defendant Peters the first indorser, for the sum of $439.78, commenced his action against Peters. The complaint alleged the making and indorsement of the note, the protest and all the facts necessary to charge the indorser, and averred that the plaintiff was now the owner and holder of the note, and that the defendant "within the six years last past has promised to pay the same." The defendant answered, specifically denying the allegations of the complaint, and averring "that more than six years have elapsed since the cause of action mentioned in the complaint accrued." The plaintiff replied denying that more than six years had elapsed since the cause of action mentioned in the plaintiff's complaint accrued. On the hearing the plaintiff introduced and proved a note as follows :

"*Troy, September 28th*, 1842.

$439.78. Three months after date I promise to pay William W. Peters or order four hundred and thirty-nine $\frac{78}{100}$ dollars, at the Catskill Bank, for value received.

ROBERT McLEAN."

(Indorsed.) Wm. W. Peters, Troy ; Clark & Landon, Troy ; Anthony & Morrison, Troy ; E. E. Kendrick.

On the 31st December, 1842, this note was protested at the Catskill Bank, and notice given to Peters and the other indorsers. At the time the note became due and was protested, Jesse Anthony was the owner of the note, and paid it at the bank. He sold it to the plaintiff before the commencement of this suit.

James Morrison, jun., formerly of the firm of Anthony & Morrison, was the only witness introduced and relied upon by the

plaintiff to take the case out of the statute of limitations. He testified in substance, that he had talked to the defendant in relation to the note and about his paying it, several times from the time it became due, up to along back 5 or 6 years. Conversed with him several times about it in the summer of 1845. The witness had a check for $250 of the defendant's, which belonged to Anthony & Morrison, and when they dissolved this check fell to him. The note belonged to Anthony at the time of these conversations. The witness told the defendant if he never paid him the check, to pay Anthony. He said Anthony should get his pay as soon as he could get it, or something to that effect. The last time he had any talk with the defendant in relation to the note was in 1850, over the river. Anthony was present. He then said he should pay Anthony as soon as he could get it, or that Anthony should not lose it, the witness was not positive which. The defendant went away to the west in the fall of 1842 and returned in 1845. The witness understood that the defendant was in Illinois. The first conversation the witness had with him about the note was the summer after he returned from the west. This conversation, and the one over the river, and the one near the defendant's house down town, were the only ones the witness could distinctly recollect about. The conversation at the defendant's house was after the one in which he presented the check. The first conversation the witness recollected of having with the defendant was when he presented him the check he had against him. The witness told him that Anthony and himself had had some words in reference to the note, and that if he never paid the check he wanted him to pay Anthony. Defendant said he would, that he would pay the note, and made no qualification. The witness could not state the time the defendant said he would call and give another note for this. Thinks he said it in 1850, when they were over the river. He said it previous to that time, witness cannot tell when. This witness fixes the time of the conversation with the defendant when the check was presented, and at the defendant's house in the summer of 1845. On a further examination he stated " I swore on my former examination

that the defendant said in this conversation (about the check) that he would pay Anthony as soon as he could get it; now I don't remember of his saying or putting in the words, 'as soon as he could get it.' I will not now say he said so, and I will not say he did not say so."

The defendant proved by a witness that he was about Troy in the fall of 1843, and that he transacted business with him in December, 1843. He had been absent, as it was said, in a western state, for about a year before that time. It was understood that the referee was to compute the amount due on the note. On the 24th March, 1853, the referee made the following report:

"I Cole H. Denio, appointed sole referee in this action, having heard the proofs and allegations of the parties and the argument of counsel, do certify and report that I find for facts the following, in this action, viz: That the defendant in this action is the first indorser on a note made by Robert McLean, payable to the order of the said defendant at the Catskill Bank, three months after date, and dated Troy, September 28, 1842, for the sum of four hundred and thirty-nine dollars 78 cents, and that said note was duly protested for non-payment at maturity; that the note was the property of the plaintiff at the time of the commencement of this action, and that more than six years had elapsed since said note became due and payable; that said defendant in the summer of 1845, promised James Morrison, jun., that he would pay said note to Jesse Anthony; that at the time of said promise Jesse Anthony was the sole owner of the note, and that said Morrison, at the time of said promise, was neither the agent nor attorney for the purpose, or in any manner authorized by said Jesse Anthony, to confer or talk with the said defendant in relation to the said note, or the payment thereof; that subsequently to said promise by the said defendant to said James Morrison, jun., the said Jesse Anthony transferred the said note to the said plaintiff in this action. And I further find that the whole amount, principal and interest, now due on said note, is $754.66; and as a conclusion of law, that the defendant in the above entitled action owes the plaintiff that sum besides costs."

Philips *v.* Peters.

The defendant excepted to the decision of the referee: 1st. In deciding that the note in suit was duly protested for non-payment, at maturity; 2d. In deciding as a matter of fact that the defendant absolutely promised James Morrison, jun., to pay Jesse Anthony the said note in the summer of 1845; 3d. In deciding that the promise made to Morrison was available to the plaintiff; 4th. In deciding that the plaintiff was entitled to recover in the action. Judgment was entered on the report of the referee, and the defendant appealed.

*J. K. Porter*, for the plaintiff.

*G. Stow*, for the defendant.

*By the Court*, WRIGHT, J. In the argument at bar, the defendant's counsel confined himself to the discussion of a single proposition, viz: That the referee erred in deciding that the promise made to Morrison was available to the plaintiff. This is, perhaps, the only question in the case. Whether an *absolute* promise had been shown was a question exclusively for the referee, and he has found against the defendant. We cannot say that the finding of this fact was erroneous. The referee finds, as facts proved, that on the 28th September, 1842, one McLean made his promissory note, payable to the order of the defendant, three months after date, at the Catskill Bank; that the defendant was the first indorser on the note, and that it was duly protested for non-payment, at maturity; that the note was the property of the plaintiff at the time of the commencement of this action, and that more than six years had elapsed since it became due and payable; that in the summer of 1845 (and whilst one Jesse Anthony was the sole owner of the note) the defendant promised James Morrison, jun., that he would pay the note to Anthony; that Morrison, at the time of the promise, was neither the agent or attorney for the purpose, or in any manner authorized by Anthony to confer or talk with the defendant in relation to the note, or the payment thereof; and that subsequently to the promise by the defendant to Morrison, Anthony transferred the note to the plaintiff. The counsel for

the plaintiff supposes that the case shows that the promises were made to Morrison, the partner of Anthony, in the course of business transactions of the defendant with *the firm* of Anthony & Morrison; and that on one occasion, in the summer of 1845, the debt was unequivocally acknowledged *in the presence of Anthony, the owner of the note ;* that this circumstance, and the partnership relation seem to have escaped the attention of the referee when considering the question of Morrison's authority.   But the case does not show these facts.   In 1845, when Morrison first conversed with the defendant in relation to the note, he had ceased to be the partner of Anthony, and distribution had been made of the assets of the firm.   The first conversation was when Morrison presented a check against the defendant, which had belonged to the firm of Anthony & Morrison, but was then the sole property of Morrison, it having fallen to him, as he testifies, upon the dissolution of the firm. The conversation in the *presence* of Anthony was in 1850, *after the statute had attached,* and not in 1845, and if any thing, was not an absolute, but a conditional promise.   It was, that *he would pay Anthony as soon as he could get it,* or that Anthony *should not lose it.*   The referee was therefore right in his finding, from the evidence, that any absolute promise made to Morrison to pay Anthony, was in the summer of 1845, and at no other time ; and that at the time of such promise, Morrison was neither the agent or attorney of the holder of the note.   In 1845, Morrison was not the partner of Anthony, nor were any promises made in the course of business transactions of the defendant with the firm of Anthony & Morrison ; nor was there any acknowledgment of the debt in the presence of Anthony. What was said in the presence of Anthony in 1850, scarcely amounted to an acknowledgment or promise, and the referee might well have considered that it did not, but if it did, it was a conditional one.   Both the evidence and finding render the proposition clear that the promise relied on to take the case out of the operation of the statute, and to sustain the report of the referee was made not to the creditor himself, or his agent, but to a stranger.   If a promise or acknowledgment be equally

operative and effective whether made to a stranger, or to the creditor himself, or his agent, then the report should be sustained, otherwise not. Were the doctrine a new one that the promise or acknowledgment which revives a debt barred by the statute of limitations, may be made to a stranger as well as to the party, I should doubt its soundness. It hinges upon the principle that as the new promise does not, as in the case of a promise to pay a debt discharged under the insolvent act, create a new liability upon a new contract, but merely removes the presumption of payment which the statute of limitations raises, it is immaterial to whom the promise is made. In case of a debt barred by the statute of limitations, if the new promise creates a new contract, and the liability of the debtor is on the new and not on the old contract, the old debt being resorted to only to furnish a consideration for the new promise, it would be entirely clear that a promise made not to the creditor, or to his agent, but to a stranger, without authority to contract, would be unavailable. If the effect of the statute were to extinguish the legal duty to pay, operating on the debt itself and not on the remedy, though a new duty may be created, it must be by a transaction between the parties, having all the legal characteristics of an original contract—an agreement and concurrence of mind between the parties in interest, and a legal consideration. The *moral* duty to pay after the extinguishment of the legal may supply that essential element of a contract—the consideration; but the new contract which creates a new cause of action must be made between the debtor and creditor personally, or by persons duly authorized by them. As in all other cases, to give validity to the agreement, the minds of the parties should meet, and when the promise of a party be made to a stranger or one without authority, it is in legal effect a mere declaration of intention, since it is wanting in a most essential element of a valid agreement. But in case of a debt barred by the statute, if the remedy only be taken away, the original demand remaining in existence, if the statute merely raises a presumption of payment which may be repelled either by an express promise or an acknowledgment of a subsisting liability and a willingness

to pay; and the action is to be maintained, if at all, on the original contract, then it is apparent that it is quite immaterial whether the new promise or acknowledgment be made to the creditor or to a third person. The latter is the view that has been uniformly taken by the courts of this state. That the effect of the statute of limitations is only to take away the remedy, which may be restored by the new promise, and not to bar the original demand; that the remedy is continued or revived by the new promise, which rebuts the presumption of payment raised by the statute; and that the *old demand*, and not the *new promise* is to be the foundation of the action, has been uniformly adjudged or conceded in a long line of cases in this state, even against the views so luminously discussed and sustained by Mr. Justice Story in *Bell* v. *Morrison*, (1 *Peters*, 374,) and has only been recently questioned in the *dicta* of the judges of the court of appeals in *Van Keuren* v. *Parmelee*, (2 *Comst.* 523,) and in *Shoemaker* v. *Benedict*, (1 *Kern.* 176.) In these latter cases, however, the question was not directly involved; and all that they decide is that a promise or acknowledgment, or payments made and indorsed on a note by one of the joint makers, do not affect the defence of the statute of limitations as to the others. (*Depuy* v. *Swart*, 3 *Wend.* 135. *Dean* v. *Hewit*, 5 *id.* 257. *Soulden* v. *Van Rensselaer*, 9 *id.* 293. *Stafford* v. *Bacon*, 1 *Hill*, 537. *Bigelow* v. *Grannis*, 2 *id.* 120. *Watkins* v. *Stevens*, 4 *Barb.* 168. *Carshore* v. *Huyck*, 6 *id.* 583. *McCrea* v. *Purmort*, 16 *Wend.* 477. *Wait* v. *Morris*, 6 *id.* 394. *Sands* v. *Gelston*, 15 *John.* 511. *Allen* v. *Webster*, 15 *Wend.* 284.) "A demand," says Mr. Justice Marcy in *Dean* v. *Hewit*, (5 *Wend.* 237,) "the remedy for the recovery of which is continued or revived by a new promise, is precisely the same after the remedy has been continued or revived, as it was before the statute had or could have attached." In *Soulden* v. *Van Rennselaer*, (9 *Wend.* 297,) Nelson, J., says that "the statute of limitations only operates upon the remedy, by affording a presumption of payment, and hence the acknowledgment of the existence of the debt revives the debt, by removing the presumption; and upon this ground it is ob-

viously unimportant to whom the acknowledgment is made, and so are the authorities." In *McCrea* v. *Purmort*, (16 *Wend.* 477,) Cowen, J., says, " The admission of a debt is available to take it out of the statute of limitations, whether that admission be express or tacit, whether made to the party or a stranger ; and it may be implied from the conduct of the party." In *Watkins* v. *Stevens*, (4 *Barb.* 168,) Paige, J., says, " In the case of debts barred by the statute of limitations, as the original debt remains, and only the remedy is taken away, and as an acknowledgment is sufficient to revive or restore the remedy, and remove the bar, and as no new contract is necessary to enable the creditor to collect his original demand, the promise or acknowledgment is equally operative and effective whether made to a stranger or to the creditor himself, or his agent. The moment the presumption of payment is repelled, which arise after a lapse of six years, the original debt is recoverable by an action founded directly upon it." In *Carshore* v. *Huyck*, (6 *Barb.* 583.)    Harris, J., says, " The objection that the promise relied upon was made to a third person, and not to the plaintiff, cannot avail the defendant.    It has been held that as the new promise does not create a new liability upon a new contract, but merely removes the presumption of payment which the statute of limitations raises, it is immaterial to whom the promise is made."    The doctrine that the operation of the statute is to extinguish the original debt, and that a *new contract* founded on an adequate consideration is necessary to maintain an action after the statute has run, is perhaps, in reason and principle, better sustainable than the doctrine firmly established in this state, that the statute only affects the remedy, raising presumption of payment from the lapse of time, which presumption may be repelled, the remedy restored, and the bar removed by a new promise or acknowledgment.    But it is not the province of this court to unsettle the latter doctrine.    When the consequences flowing from unsettling principles established by a long current of adjudications, are so extensive and wide-spread, and it may be disastrous, our plain duty is to be governed by the rule of *stare decisis*, leaving to the court of last resort to

change the law. This that court has not yet done, certainly not in the cases of *Van Keuren* v. *Parmelee* or *Shoemaker* v. *Benedict.* In those cases the action was upon the original demand, and it was not pretended that there could not be a recovery against the joint debtor making the promise or indorsing the payment; which could not be if the doctrine that the demand is extinguished had prevailed. If the statute extinguishes the original debt, and a new contract creating a new liability is necessary, there can be no cause of action upon the extinct debt, and the action, if sustainable at all, should necessarily be upon the new contract, not only in substance but in form. In this case the referee found that in 1845, (some two and a half years after the right of action accrued on the note) and whilst the note was the property of Anthony, the defendant acknowledged the indebtedness, and promised to pay the note to Anthony; that this acknowledgment or promise was not made to Anthony, or his agent, or to any person authorized to act for him, but to a third person, who had previously been the partner of Anthony, but at the time of the promise was in no way connected with him, nor had he any authority to demand or request payment. Finding as a question of fact that an absolute promise had been made within six years prior to the commencement of the action, though not to the agent of the holder of the note, he decided, as a matter of law, that the debt was not barred, nor had the statute of limitations attached, and reported in favor of the plaintiff. This decision was in conformity to an unbroken chain of authority, not only in this state but in England, and some of our sister states. (*See cases cited above, also, Oliver* v. *Gray,* 1 *Harris. & Gill,* 204; *Peters* v. *Brown,* 4 *Esp.* 46; *Whitney* v. *Bigelow,* 4 *Pick.* 110; *St. John* v. *Garrow,* 4 *Porter,* 223; *Fearn* v. *Lewis,* 6 *Bing.* 149.)

The judgment entered on the report of the referee should be affirmed.

[ALBANY GENERAL TERM, May 7, 1855. *Harris, Watson* and *Wright,* Justices.]