Mr. Justice Cox
delivered the opinion of the Court:
This was an action brought upon a promissory note for $900, and for money lent, amounting to $400 more, making in all $1,300. The declaration contains also the common counts.
The principal defense was the Statute of Limitations. But the plaintiff relies upon a new promise to avoid that defense. By mutual consent of the parties a .jury was waived and the testimony was submitted to the Court. After the testimony on behalf of the plaintiff was closed, the defendant’s counsel moved the Court to rule as a matter of' law that on this evidence the plaintiff could not recover on the ground that the only evidence that had been offered to overcome the plea of the Statute of Limitations was not competent for that purpose, and on the further ground that it was not sufficient. The'Court denied the motion. The defendant excepted'and brought the case here.
The first question is an interesting one in regard to practice. It is claimed on the part of the plaintiff that the case is governed by the 'Act of Congress of 1865 in relation to trial of issues of fact by the Court instead of a jury. Section 4 of that act provides that “issues of fact in civil cases in any circuit court of the United States may be tried and determined by the Court without the intervention of a jury, whenever the parties, or their attorneys of record, file a stipulation in writing with the clerk of the Court waiving a jury.”
There was no stipulation in writing filed in this case. *488 The plaintiff relied upon the decision of the Supreme Court of the United States in the case of Kearney vs. Case, 12 Wall., 275, in which that Court refused to consider the ruling of the Circuit Court because the record did not disclose the fact that the jury had been waived and the issues of fact submitted to the Court by stipulation in writing.
If we look at the Act of March 3, 1865, we find its title to be: “An Act Regulating Proceedings in Criminal Cases, and For Other Purposes.” The first section relates to grand' juries in district or circuit courts and the number composing them; section 2 relates to the number of challenges, etc.; the third section directs where sentences for more than one year are to be executed; and the fourth section contains the provision already quoted above, and then adds: “The finding of the Court upon the facts, which finding may be either general or special, shall have the same effect as the verdict of a jury.”
It is obvious that this fourth section applies exclusively to circuit courts of the United States and is limited by its véry terms to that subject-matter. The main body of the act relates to proceedings in both circuit and district courts of the United States. But this fourth section has no application to the District of Columbia; and even if it had, it would apply only to those cases in which a writ of error is prosecuted from the Supreme Court of the District of Columbia to the Supreme Court of the United States, and would have no application to the case of transfer from special to general term by a mere motion for a new trial upon bill of exceptions. It does not seem to us, therefore, that the act applies to proceedings in this Court.
On this subject, we have only two things for our guidance; the first is the provision of our Organic Act, and the second is our Rule 39. Our Organic Act was passed in 1863, and consequently before the act of Congress referred to. Section 7 of that act provides that “ all isues of fact triable by a jury or by the Court shall be tried before a single justice; *489 when the trial is by a jury, at a circuit court; and when the trial is without a jury, at a circuit court or special term.”
It seems to assume that issues of fact may be triable in this District, and in this Court, by the Court without the intervention of a jury. It might be argued that this had reference to the determination of questions of fact, as known to pre-existing practice, only in a court of equity. But the expression “issues of fact” is strictly a common law one, has a strictly common law signification, and means simply issues made by common law pleadings and traverse.
In addition to that we have our own common law rule of practice, No. 39, which was passed pursuant to the general authority conferred upon the Court to pass all rules necessary for regulating the practice of the Court and such other rules as the Court may deem necessary for the regulation of the practice of the Court and from time to time to revise and alter such rules. That rule is as follows:
“All cases involving issues of fact shall be placed on a calender to be called a trial calendar, and shall be tried by a jury at a circuit court, or by consent of parties, by a justice either at a circuit court or special term.”
Now, it is true that where there is no authority for submitting an issue of fact to the Court, there is no common law way of reviewing the rulings of the Court arising upon those facts. In that case, the judge is treated as a mere referee, and is said not to determine the facts judicially. That was held by the Supreme Court in the case cited in the brief. But where there is authority of law for the determination of issues of fact by the Court, then the Court decides facts judicially, and the rulings of the Court upon those questions are subject to review. It is certain that this Court never had the design, by allowing issues of fact to be tried by a judge holding the Circuit Court, to cut off the party affected by the judge’s rulings from the right of *490 review of those rulings upon appeal or by motion for a new trial upon exceptions.
We, therefore, are of opinion that the act of Congress of 1865 does not regulate the subject, and the ruling in this particular case can be considered by this Court by way of review.
That brings us to the merits of the case. The facts relied upon by the plaintiff, in answer to the plea of limitations, are that this old lady, the decedent, whose estate was represented by Mr. Heald, had, at one time, employed a certain Mr. Hertford as her agent to recover some bonds; that a few days before her death she sent to Mr. Hertford for the purpose of getting him to have her removed to Providence Hospital; that in a casual conversation with him on that occasion she stated that she expected soon to recover those bonds; that if she did so she would pay Mr. Cunkle, the plaintiff in this case, the $1,300 she owed him; but that, if she did not get the bonds, Mr. Cunkle would be paid anyway.
'Mr. Hertford had never been the agent for the plaintiff in this case, Cunkle, but had been the agent for the decedent herself, the debtor. So that this was a casual conversation between her and her own agent, in which she expressed the intention to pay this debt under certain circumstances, but she expressed no desire to have him communicate this intention to the plaintiff. It was simply confidential talk between her and her agent. Therefore, the question is, whether admissions or declarations of that sort, made by the debtor to a third person, not intended to be communicated to the creditor, are admissions of that sort from which a new promise can be inferred in order to take the case out of the Statute of Limitations.
We all know that two different theories have prevailed at different times with reference to this defense of the Statute of Limitations. At one time the courts held that the statute was merely designed to raise the presumption *491 of payment of the debt which could be rebutted by .any proof that the debt was still unpaid, and especially by proof of the debtor’s own assertion that it was unpaid; and, in accordance with that view, it was quite consistent to hold that an acknowledgment by the debtor to any third person that he owed the money was competent evidence to revive the debt or to answer the defense of the statute. That was the doctrine laid down in one old case in Baron Alderson’s reports.
A later view has been that the statute 'was a statute of repose, as -it was called, and was intended to be an absolute bar or defense to the action, although it might be shown by the debtor’s own admission that the debt never had been paid. In accordance with that view it became necessary that a now promise should be made in order to revive or keep alive the debt and enable the creditor to maintain his action, the original debt being treated as the consideration for the new promise.
The Court of Appeals of Maryland may be ranked among those Courts which took this first-named view, and they went to the extreme. They held that if a debtor admitted the existence of the debt, and even avowed his determination to roly upon the statute, yet nevertheless the debt was revived. This was the doctrine laid down in the case of Oliver vs. Gray, 1 Har. & G., 204, which is referred to in the argument.
The Supreme Court of the United States, however, has taken the other view, and in a series of decisions announced that as the law of the Federal Courts; and in the late case of Shepherd vs. Thompson, 122 U. S., 231, have laid it down as applicable in this District. In that case, Mr. Justice Gray, delivering the opinion of the Court, said: “The Statute of Limitations in force in the District of Columbia is the Statute of Maryland, which, so far as applicable to this case, closely follows the language of the English Statute, 21 Jac. 1, chap. 15, sec., 3, but bars an *492 action on a promissory note or other civil contract in thre.e years after the cause of action accrues. * * * The principles of law, by which this case is to be governed, are clearly settled by a series of decisions of this Court. The Statute of Limitations is to be upheld and enforced, not as resting only on a presumption of payment from lapse of time, but, according to its intent and object, as a statute of repose.
“ The original debt, indeed, is a sufficient legal consideration for a subsequent new promise to pay it, made either before or after the bar of the statute is complete. But, in order to continue or revive the cause of action, after it would otherwise have been barred by the statute, there must be either an express promise of the debtor to pay that debt, or else an express acknowledgment of the debt, from which promise to pay it may be inferred. A mere acknowledgment, though in writing, of the debt as having once existed is not sufficient to raise an implication of such a new promise. To have this effect, there must be a distinct and unequivocal acknowledgment of the debt as still subsisting as a personal obligation of the debtor.”
Elsewhere it is said that it must be indicated by the acknowledgment that the debtor desires and means to pay the debt.
I am not aware that any Court holding the second theory, the one which is maintained by the Supreme Court, has ever recognized it as a rule that an acknowledgment by the debtor to a third person is sufficient to revive the debt — i. e., that a new promise to pay a creditor can be inferred from an acknowledgment of the debt to a third person. The contrary rule seems to be pretty well established by the weight of authorities which are summed up in the notes to the leading case of Whitcomb vs. Whiting, Sm. Lead. Cas., 726, as follows: “It has been held, and is well settled, both on authority and principle, that the debt will not be revived by an entry or memorandum, not forming part of a mutual *493 account, on the books or papers of the debtor, or by a mere declaration or admission to a third person, meant only for his ear, and not intended to be communicated to the creditor (Goodwin vs. Gulley, and Edwards vs. Gulley, 4 Hust. & N., 373, 377; Bodger vs. Arch, 10 Exch., 333,341; Grenfell vs. Girdlestone 2 Younge & C., 676; Bloodgood vs. Bruen, 4 Sandf., 427; S. C., 8 N. Y., 362; Wakeman vs. Sherman, 9 N. Y., 85; Kyle vs. Wells, and Gillingham vs. Gillingham, 17 Pa., 286, 302; Pearson vs. Darrington, 32 Ala., 227; Keener vs. Crull, 19 Ill., 189); not so much because the acknowledgment is made to a stranger, as because there is no sufficient evidence of an intention to contract. ' If,’ said Pollock, O. B., in Edwards vs. Gulley, 'the defendant had written in a book a private memorandum of his debt, and the plaintiff had got hold of it and produced it in Court, that would not take the case out of the statute, because no promise to pay could be inferred.’ So Baron Alderson remarked, in Grenfell vs. Girdlestone, ' that if a man were to write a letter to a third person acknowledging a debt, that would not take it out of the statute.’ And the language held in Gillingham vs. Gillingham might convey the idea that even when the promise is express, it will still fail from the want of privity between the promisor and the creditor. This view seems to be better founded than that which prevailed in some of the earlier cases, where any acknowledgment from whence the continued existence of the debt could be inferred, was deemed sufficient, whether made to a third person or to the plaintiff in the action. Smith vs. Campbell, 5 Harr. (Del.), 380; McRae vs. Kennon, 1 Ala., 295; Soulden vs. Van Rensselaer, 9 Wend., 297 ; M’Crea vs. Purmort, 16 Wend., 477; Titus vs. Ash, 24 N. H., 319 ; Phillips vs. Peters, 21 Barb., 351; Watkins vs. Stevens, 4 Barb., 168; Garshore vs. Huyck, 6 Barb, 585; Whitney vs. Bigelow, 4 Pick., 110; Minkler vs. Minkler, 16 Vt., 193; Oliver vs. Gray, 1 Har. & G., 204; Bird vs. Adams, 7 Ga., 505; St. John vs. Garrow, 4 Porter, 225; Mountstephen vs. Brooke, *494 3 Barn. & Ald, 141; Clark vs. Hougham, 2 Barn. & C, 149. But, although a declaration to one man will not ordinarily be binding as a contract with, or agreement in favor of another, this ceases to be true when there is a consideration moving from the latter, and the promise is meant to inure to his benefit and confer a right of action on him; for when this is the case the promisee becomes a mere conduit pipe or link between the contracting parties (Comfort vs. Eisenbeiss, 11 Pa, 13,16); and the agreement will be as valid as i'f it had been made directly to the person by whom it is sought to be enforced. Edmundson vs. Penny, 1 Pa, 335; Hassinger vs. Solms, 5 Sorg. & R, 4. A debt may, therefore, be revived by a promise or admission to a stranger, if it sufficiently appears that the intention was that the declaration made to him should be communicated to and influence the creditor. Wakeman vs. Sherman, 9 N. Y., 85, 92; 2 Story Eq., sec. 1521; Collect vs. Frazier, 3 Jones Eq, 80; Jordan vs. Hubbard, 26 Ala, 433;. Evans vs. Carey, 29 Ala, 99.”
In opposition to that there is cited the case of Soper vs. Baum [ante, p. 29], which case was decided in this Court. In that case, the promise was made in fact to the creditor himself, and not to a third person. The plaintiff himself called upon the defendant and the defendant said: “Mr. Soper, I had thonght to make a payment on that note before this; I would pay you something on it to-day, but I am not in funds; call again.” Again, one of the'plaintiff’s counsel afterwards visited the defendant, showed him the note and the defendant said: “It is all right; I will come down next Wednesday and make a settlement.”
Mr. Justice Merrick, in delivering the opinion of the Court, said: “These are both explicit acknowledgments of an existing debt due upon the promissory note, and one of them made with the note before him; and there is no qualification or declaration accompanying either which would exempt the defendant from a moral obligation to pay the debt. *495 The only qualification to the first was, that he had no funds at the moment; but that was settled with an invitation to call again. Call for what? Unquestionably to receive the payment which the suddenness of the occasion alone prevented him from making on the instant. The second was equally explicit.”
The Court below had held that the language used was insufficient to amount to a promise as required by the statute. But Mr. Justice Merrick said: “We are of opinion that the Court erred in this. The testimony was, in our judgment, competent to go to the jury, and if believed by them, either of the acknowledgments was sufficient to repel the bar of the Statute of Limitations.”
So far the Court was strictly within the rule laid down by the Supreme Court, and that an explicit acknowledgment of an existing indebtedness is sufficient from which to infer a new promise. Judge Merrick then went on to say: “In the case of Oliver vs. Gray, 1 Har. & G., 204, the Court of Appeals of Maryland make a number of resolutions which have been recognized ever since in Maryland and in this District as correct expositions of the law on this subject.”
One of these resolutions was that “The acknowledgment need not be made to the plaintiff himself, but may be made to anybody else.”
So far as the Court did not go beyond the case, the case of Soper vs. Baum is authority. But so far as the language of the Court went beyond the facts it was obiter dictum.
In the case of Oliver vs. Gray, 1 Har. & G., 204, the Court of Appeals held that the declaration did not amount to an admission of the debt, and therefore did not sustain the plaintiff’s claim; and yet the Court proceeded to lay down some ten propositions entirely outside of the case, all of which were purely obiter dicta, and one of those propositions was that an acknowledgment to a third person was equally goocl with an acknowledgment to the creditor himself.
*496 Several other propositions so laid down are in direct conflict with the opinion of the Supreme Court in the case of Shepherd vs. Thompson. One of them was, that the acknowledgment of the non-payment of the debt, although the plaintiff declared his intention to rely upon the Statute of Limitations is, nevertheless, sufficient to revive the debt. All that was said beyond what was required by the facts of the case was simply obiter dictum and is not tobe considered as committing this Court to any general proposition such as that an acknowledgment to a third person is sufficient to revive the debt. No authority is cited for the case of Soper vs. Baum, except the case in Maryland, and the mere expression of opinion casually made in that case was obiter dictum and not authoritative.
Therefore, we hold that an acknowledgment of a debt made casually to a third person and not communicated or intended to be communicated to the creditor himself is not sufficient to revive the debt; and consequently we are compelled to overrule the Court below and grant a new trial.