## In re LORILLARD et al.

### (Circuit Court of Appeals, Second Circuit. April 3, 1901.)

### No. 137.

**1. LIMITATION OF ACTIONS—ACKNOWLEDGMENT IN WRITING—SUFFICIENCY.**

A debtor, in writing to his creditors, wrote of "my indebtedness to you," asked for a statement of what he "now" owed, "estimated" his indebtedness to one of them at more than it really was, and asked for statements from them of their figures, that he might compare with his own. There was nothing in his letters to "repel the presumption" of a promise to pay what he admitted he owed, and nothing inconsistent with such an inference from his admission. *Held* sufficient acknowledgment in writing, within Code Civ. Proc. N. Y. § 395, to take the debts in question out of the operation of the statute.

**2. BANKRUPTCY—OBJECTION TO CLAIMS—PREVIOUS PAYMENT.**

A debtor, prior to his bankruptcy, had deeded to a trustee a bond and second mortgage on corporate property to secure advances made, and to be made, by two of his creditors. Thereafter a receiver was appointed for the corporation, and a plan of reorganization proposed. It did not provide that the two creditors referred to should release their claims against the bankrupt, but did so provide as to others, and contemplated foreclosure of the first mortgage. The second mortgage was foreclosed, and the corporate property bought in by the counsel who conducted the foreclosure. The title was then transferred by him to a new company, in return for common stock therein, which he transferred to the trustee before referred to, by whom it was distributed to various parties, the two creditors each receiving some. *Held*, on a claim that they were paid, that conceding that the plan was carried out, and that they had released their claims against the old company on receiving such stock, they still subsisted in full against the bankrupt, the stock merely taking the place of their former collateral security, and, being worthless, did not reduce the amount of their claims against him.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from an order of the district court, Southern district of New York, allowing two claims against

the bankrupt, one of Peter Lorillard for $285,725.91, and the other of Henry I. Barbey for $299,603.51. Both include interest. Objection to such allowance was made by several of the other creditors, some of whom have appealed.

A. B. Cruikshank, for appellant Eleventh Ward Bank.

Lewis S. Haslam, for appellant Gallatin Bank.

Charles E. Hughes, for appellees.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. Two objections are urged to the allowance of these claims,—(a) that they were outlawed at the time petition in bankruptcy was filed, and (b) that they had been paid some years before.

Peter Lorillard is the brother, Barbey the brother-in-law, of the bankrupt. Their claims are for money loaned him upon his promissory notes. The latest due date of any note held by either is more than six years prior to the filing of petition in bankruptcy. Both claims would be barred by the statute unless there has been some acknowledgment or promise in writing, signed by the debtor, within the six years. The claimants rely on the following correspondence:

"New York, 16 March, 1900.

"My Dear Barbey: I would like to get from you a statement of my indebtedness to you. According to Seidler's account, I now owe you $215,000, exclusive of interest, but my memoranda is for $225,000. Please let me know your figures.

"Yours, truly,                                   Jacob Lorillard.

"To Henry I. Barbey, Esq."

"New York, March 19, 1900.

"My Dear Barbey: Thanks for your statement of my indebtedness to you of $191,198.53 in 1891. I will go over my accounts, as had estimated it more than this, and Pierre's at less than he makes, but have great confidence in the correctness of your accounts, as mine are memoranda.

"Yours, truly,                                   J. Lorillard.

"To Henry I. Barbey, Esq."

"New York, March 16, 1900.

"My Dear Pierre: I would like to get from you a statement of my indebtedness to you. Seidler's statement is that I now owe you $207,955.70, exclusive of interest. Please let me know your figures.

"Yours, truly,                                   Jacob Lorillard.

"To Pierre Lorillard, Esq."

"March 17, 1900.

"C. D. Finlay, Esq.—Dear Sir: I write to you, as the representative of my brother Pierre, to request that you send me a statement of my present indebtedness to him. According to Seidler's statement, I now owe my brother Pierre, for advances made by him to me some years ago, two hundred and seven thousand nine hundred and fifty-five $^{70}/_{100}$ dollars, and interest. Please give me a detailed statement of the figures, as you have them.

"Yours, truly,                                   Jacob Lorillard."

What written statement will be sufficient to take a case out of the operation of the statute of limitations is regulated by the provisions of the New York Code of Civil Procedure. Discussions of the general subject, found in the opinions of the federal courts and of courts of other states, are therefore unpersuasive. The statute

of New York, as interpreted by the New York courts, is controlling. The Code contains the following provision:

"Sec. 395. Acknowledgment or new promise must be in writing. An acknowledgment or promise, contained in a writing, signed by the party to be charged thereby, is the only competent evidence of a new or continuing contract, whereby to take a case out of the operation of this title. But this section does not alter the effect of a payment of principal or interest."

It will be observed that the statute does not require an express written promise to pay. A written acknowledgment of the indebtedness is sufficient, if such acknowledgment is explict and unqualified. The courts have held that where the acknowledgment is qualified, as with a denial of the equity or legality of the demand, or an assertion of poverty and inability to pay, or in any other way so as to "repel the presumption of a promise to pay," it is not sufficient. Hancock v. Bliss, 7 Wend. 267; Deyo's Ex'rs v. Jones' Ex'rs, 19 Wend. 491; Allen v. Webster, 15 Wend. 284; Bloodgood v. Bruen, 8 N. Y. 362; Insurance Co. v. Brett, 44 Barb. 489.

If, however, there be an unqualified acknowledgment that there is an existing present indebtedness, and such acknowledgment be not coupled with any suggestion of compromise, or postponement, or anything inconsistent with the inference which naturally follows from such acknowledgment, it is sufficient. "A bare or mere acknowledgment of the existence of the debt is sufficient, as the law will imply or infer from its existence a promise to pay it." Henry v. Root, 33 N. Y. 530. An unconditional acknowledgment raises the inference of a promise to pay. Stevens v. Seibold, 5 N. Y. St. Rep. 261. "It seems to be the general doctrine that the writing, in order to constitute an acknowledgment, must recognize an existing debt, and that it should contain nothing inconsistent with an intention on the part of the debtor to pay it." Manchester v. Braedner, 107 N. Y. 349, 14 N. E. 405; Cudd v. Jones, 63 Hun, 144, 17 N. Y. Supp. 582; McNamee v. Tenny, 41 Barb. 495; Fiske v. Hibbard, 45 N. Y. Super. Ct. 331; Wright v. Parmenter, 23 Misc. Rep. 629, 52 N. Y. Supp. 99.

The acknowledgment of a present indebtedness to both Lorillard and Barbey in the case at bar is manifestly entirely unqualified. The debtor writes of "my indebtedness to you"; asks for a statement of what he "now" owes; "estimates" his indebtedness to one party at more than it really is; and asks for statements from his creditors of their figures, that he may compare with his own. There is nothing in the letters to "repel the presumption" of a promise to pay what he admits he owes; nothing inconsistent with such an inference from his admission. Under the authorities in this state, had the creditors on March 21, 1900, brought suit against Jacob Lorillard in the state court to recover this indebtedness, the statute of limitations would not operate as a bar to their recovery.

It is further contended that these claims "were paid off and extinguished by the reorganization proceedings under which the New York & New Jersey Fireproofing Company was organized." The facts upon which this contention is founded are as follows: Prior

to 1888 the bankrupt was carrying on the business of brick making at Keyport, N. J. On September 15, 1888, he incorporated the Lorillard Brick-Works Company, to which he turned over the plant and business, taking its stock therefor. On October 1, 1888, a so-called "first mortgage" of $335,000 was executed by this corporation to Gouverneur Tillotson, as trustee, to secure bonds for that amount. This was really a second mortgage on some of the property, because there was a small purchase-money mortgage for $12,000 outstanding, which may be disregarded here. Subsequently, and prior to September 2, 1890, the same corporation executed a mortgage (which may be called the "second mortgage") to Jacob Lorillard himself, for $265,000, to secure a bond of the corporation to him, conditioned for the payment of said sum of $265,000 on demand, with interest. On September 2, 1890, he assigned this bond and mortgage to Tillotson in trust to secure, inter alia, the advances which Peter Lorillard and Barbey had already made to him on his notes, and as indorsers and guarantors, and also further advances to be made to the extent of $91,390. The text of the deed of trust is:

"In order to secure to said parties the payment of such advances past and prospective, and to save them from loss by reason of such indorsements and guaranties, the said Jacob Lorillard has assigned said bond and mortgage to the party of the second part, as trustee for the benefit of said parties, as interest may appear, and under the trust hereinafter declared."

The deed provided that, upon a certain written request by parties representing a majority of the indebtedness, the trustee should forthwith proceed to foreclose the mortgage, dividing proceeds of sale after expenses ratably among the parties, and paying over the surplus, if any, to Jacob Lorillard. On December 13, 1890, Charles Seidler was appointed receiver of the Lorillard Brick-Works Company, and continued to administer the property for several years. Subsequently, apparently in 1893, it was proposed to reorganize, and a circular was issued, which set forth the following proposed plan: First. Issue of $150,000 first-mortgage bonds to pay off receiver's certificates and for working capital. Second. Issue of preferred stock in the new corporation in place of the first-mortgage bonds of the Lorillard Brick-Works Company, amounting to $335,-000. Third. "That the holders of the second mortgage consent to allow the reorganization to proceed without delay, and to accept for their claims, principal and interest, the common stock of the company at par." Fourth. "That the unsecured creditors shall release their claims against the old company and the real estate of the same in the hands of the receiver, and their claims individually against Jacob Lorillard, and receive common stock in the new company at par for their claims, principal and interest."

The record does not show whether this proposed plan was ever signed by anybody, or whether bonds, stocks, and proofs of claims were deposited under it. Instead of proceedings being instituted under the first mortgage, as the plan contemplated, the parties secured by the second mortgage merely "allowing the reorganization to proceed," they became themselves the actors. Foreclosure proceedings were begun under the second mortgage in 1893, decree of

sale duly entered, and the property of the old company sold October 14, 1894, for $1,000, to William Brinckerhoff, the counsel who conducted the foreclosure suit, and who subsequently conveyed the property to the New York & New Jersey Fireproofing Company, the new corporation. The preferred stock of the new company ($335,000) was taken by the bondholders, who were secured by the first mortgage. The common stock appears to have been issued to Mr. Brinckerhoff originally in payment for the title, and by him was transferred to Mr. Tillotson, through whom it was distributed to various parties. Mr. Barbey received some, apparently Mr. Peter Lorillard received some, and other parties to this proceeding, such as the Eleventh Ward Bank, also received a portion.

There is contention between appellants and appellees as to whether the purchase of the property by Brinckerhoff was in the interest of the plaintiffs in the foreclosure or in the interest of all creditors who had been invited to enter into the plan of reorganization; also whether or not such plan was actually carried out; and whether under it the holders of old claims against the old company who took common stock in the new were compelled to release their old claims, or bound by some obligation of good faith so to do. The referee held that "whatever may have been the plan or purpose expressed in the printed reorganization circular, or whatever may have been the wishes of the committee of creditors appointed to carry out the reorganization, as a matter of fact none of the other creditors, excepting the bondholders, were obliged to relinquish their claims, upon receipt of the stock of the new company." The district judge sustained the referee, and the appellants strenuously insist that this is error. But we do not find it necessary to go at any length into a discussion of this branch of the case, in view of the fact that it is not disputed that the common stock of the new corporation is valueless. Even if it were conceded that all the proceedings under which the property was sold were conducted in order to carry out the proposed plan, and that all parties are bound by its terms, it is difficult to understand upon what theory it can be contended that Jacob Lorillard's debts to his brother and to Barbey were thereby paid or released. Under the plan the unsecured creditors expressly agreed to take common stock, not only for their claims against the old company, but also for their claims against Jacob Lorillard individually, and to "release" both sets of claims. But there is no such provision in the paragraph referring to the holders of the second mortgage. It is their claims under that instrument for which they are to "accept" common stock (there is no provision as to any release). What were those claims? The right to payment of a bond for $265,000, whereby the old company was obligated to pay that sum on demand to Jacob Lorillard or his assigns, and the further right to sell out the property, if demand failed to bring the money. But if those rights were both extinguished, parted with, released, abandoned, it would make no difference, so far as the claims against the bankrupt are concerned. The bond and mortgage were only collateral security for his individual debts held by certain of his creditors, and if common stock of the new company

has taken the place of, or ought to take the place of, the old second mortgage, then such common stock will itself be the substituted collateral. If it were worth anything, there might be some question as to whether the amount of the claims is correctly found by the referee; but, since it is valueless, there is no theory upon which the conclusion of the district court could be reversed. The order appealed from is affirmed.